# United States District Court

FOR THE

**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

FILED

Aug 12 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES OF AMERICA,

V.

DALE BEHM; YONG HENG LIANG, a/k/a COLIN LIANG; JOSHUA STANKA;
JOSHUA CLARK; and MICHAEL CHOY,

DEFENDANT(S).

## INDICTMENT

18 U.S.C. § 286 – Conspiracy to Defraud the Government with Respect to Claims;
18 U.S.C. § 287 – False, Fictitious, or Fraudulent Claims;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1341 – Mail Fraud;
18 U.S.C. § 1957 – Money Laundering;
18 U.S.C. § 1956(a)(2)(A) – Laundering Monetary Instruments;
18 U.S.C. § 2 – Aiding and Abetting; and
18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B) and 28 U.S.C. § 2461 – Criminal Forfeiture

A true bill.

/s/ Foreperson of the Grand Jury

Foreman

Filed in open court this _____11th_____ day of

_____August, 2020_____.

Rose Maher, Courtroom Deputy

Clerk

Bail, $ __no bail__

Thomas S. Hixson, U.S. Magistrate Judge

DAVID L. ANDERSON (CABN 149604)
United States Attorney

FILED

Aug 12 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br> v. <br><br> DALE BEHM; YONG HENG LIANG, a/k/a COLIN LIANG, ; JOSHUA STANKA; JOSHUA CLARK; and MICHAEL CHOY, <br><br> Defendants. | Case No. CR20-321EMC <br><br> VIOLATIONS: <br> 18 U.S.C. § 286 – Conspiracy to Defraud the Government with Respect to Claims; <br> 18 U.S.C. § 287 – False, Fictitious, or Fraudulent Claims; <br> 18 U.S.C. § 1343 – Wire Fraud; <br> 18 U.S.C. § 1341 – Mail Fraud; <br> 18 U.S.C. § 1957 – Money Laundering; <br> 18 U.S.C. § 1956(a)(2)(A) – Laundering Monetary Instruments; <br> 18 U.S.C. § 2 – Aiding and Abetting; and <br> 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B) and 28 U.S.C. § 2461 – Criminal Forfeiture <br><br> SAN FRANCISCO VENUE <br><br> (UNDER SEAL) |

I N D I C T M E N T

The Grand Jury charges:

At all times relevant to this indictment, unless otherwise indicated, and with all dates being approximate and all date ranges both approximate and inclusive:

//

//

INDICTMENT                                1

# INTRODUCTORY ALLEGATIONS

## Background Regarding International Cargo Shipments

1. International imports and exports of cargo are frequently transported via standardized shipping containers that are eight feet wide and twenty to forty feet deep. A standardized cargo container can hold in excess of 25,000 kilograms of cargo. Standardized cargo containers can be fitted to tractor trailers or train cars for road or rail shipment or loaded onto oceangoing vessels for interstate and international shipment.

2. Orient Overseas Container Line ("OOCL") was an interstate and international shipping company headquartered in Hong Kong, Special Administrative Region of the People's Republic of China ("Hong Kong"). OOCL conducts interstate and international shipping out of the Port of Oakland, in the Northern District of California, among other places in the United States.

3. Maersk Lines was an interstate and international shipping company headquartered in Denmark. Maersk Lines conducts interstate and international shipping out of the Port of Oakland, in the Northern District of California, among other places in the United States.

4. OOCL and other shipping companies required that a cargo container's sender provide information for a commercial bill of lading. The information provided by the shipper included an identification of the shipper, the consignee, or recipient, the port of loading, the port of discharge, and a description of the contents of the container. Bills of lading also included the gross weight of the container, the container's declared value, and information about the cost of the shipment.

## Defendants, Entities Controlled by Defendants, and Other Entities

5. Defendant YONG HENG LIANG, also known as COLIN LIANG ("LIANG"), was a resident of Daly City, California.

6. ML Trading Group, Inc. ("ML Trading") was a company located in San Lorenzo, California, within the Northern District of California. ML Trading filed Articles of Organization with the California Secretary of State on July 14, 2014. ML Trading purported to be an exporter of materials from the United States.

7. Bay Area Tire Recycling, Inc. ("BATR"), was a company located in Hayward, California. BATR was incorporated in California on November 28, 2011. Prior to February 1, 2019,

BATR was permitted by the State of California to have no more than 4,999 tires at its facility. Tire retailers paid BATR to recycle customers' used tires.

8. LIANG controlled ML Trading and BATR.

9. Under the direction and control of LIANG, BATR, which purported to recycle tires, bundled and loaded used tires into shipping containers. LIANG arranged for the containers to be shipped to ports in countries in Asia, including the Republic of Korea, India, and Vietnam.

10. The Pacific Rim Traders, LLC ("Pacific Rim") was a company headquartered in San Francisco, California. Pacific Rim filed Articles of Organization with the California Secretary of State on April 27, 2006.

11. Pacific Rim was owned and controlled by individuals in China. Pacific Rim imported thousands of metric tons per month of Polyethylene Tetraphthalate resin ("PET"), a plastic resin that can be melted and formed into plastic items, including beverage bottles. PET imports from China are subject to tariffs collected by U.S. Customs and Border Protection ("CBP").

12. Defendant DALE BEHM ("BEHM") was a resident of California and later Missouri. From at least December 22, 2013, to at least July 12, 2017, BEHM was the General Manager of Pacific Rim.

13. Defendant JOSHUA STANKA ("STANKA") was a resident of Texas. STANKA was a consultant for an entity registered in Texas on or about May 24, 2013, which purported to secure rights from third-party exporters for use in drawback claims by offsetting the tariffs paid by the entity's clients, including Pacific Rim.

14. On or about April 22, 2015, STANKA registered a Texas entity called TPP Export America, LLC ("TPP Export"), which purported to secure rights from third-party importers and exporters for use in drawback claims of its clients, including Pacific Rim. STANKA was a 37.5 percent owner of TPP Export.

15. Defendant JOSHUA CLARK ("CLARK") was a resident of Fulshear, Texas. CLARK was President and a 37.5 percent owner of TPP Export.

16. On or about February 6, 2017, CLARK registered a single-member Texas entity named Hammer Trading, as a company specializing in customs drawback consulting. CLARK and STANKA controlled Hammer Trading. In July 2017, Hammer Trading took over the clients of TPP Export.

17. Defendant MICHAEL CHOY ("CHOY") was a resident of Canada. CHOY controlled two companies that purported to arrange for exports of recycled material, including plastic, to countries in Asia.

18. JP Morgan Chase Bank, Bank of America, Independent Bank, and Integrity Bank were financial institutions, as that term is defined in Title 31, United States Code, Section 5312, the deposits of which were insured by the Federal Deposit Insurance Corporation. Canadian Imperial Bank of Commerce and Toronto Dominion Bank were foreign banks, as that term is defined in Title 12, United States Code, Section 3101.

Background Regarding Drawback Claims

19. Tariffs are charges imposed by the United States on imports or exports of particular goods. Tariffs are also known as "duties."

20. CBP is an agency of the United States, within the United States Department of Homeland Security, which is a department of the United States. Among other things, CBP is responsible for administering import and export regulations and collecting tariffs, and approving claims for refund of tariffs, known as "drawbacks." By regulation, up to 99% of the original tariff amount may be refunded through a qualifying drawback. Tariffs are imposed based on the product imported, its weight, and the country of origin.

21. Drawback claimants submit claims to CBP. In addition to other requirements, drawback claims must be signed under penalty of perjury. If the claimant is not the original importer of the later-exported item, the claimant must submit a delivery certificate from the original importer to substantiate the claimant's right to claim a drawback. If the claim is accepted, CBP pays the drawback to the claimant by Treasury check.

22. Subject to the posting of a customs bond and other requirements, drawback claimants may seek approval from CBP for accelerated payment of drawback claims pursuant to 19 C.F.R § 191.92. Drawback claimants that have been accepted for accelerated payment of drawback may

receive payment in as little as three weeks of electronically filed claims. The drawback claim is later reviewed by a CBP Drawback Specialist and, if approved, the claim is considered to be "liquidated." A drawback claimant filing claims under the accelerated drawback program may not claim total drawbacks in excess of the posted bond at any given time.

23. Pursuant to 19 U.S.C. § 1313(p), an importer of certain finished petroleum derivatives, including certain plastic resins such as PET, may claim a tariff drawback of up to 99% of tariffs paid for the import of such material if the item or an item "of the same kind and quality" is exported within 180 days of the import. An exported item may also be eligible to offset an imported item's tariff if the two items share an 8-digit classification according to the U.S. Harmonized Tariff Schedule ("HTS") published and maintained by the U.S. International Trade Commission.

Drawback Claims Filed by Pacific Rim

24. Pacific Rim, and other clients of TPP Export, did not export merchandise or return unused imported merchandise that would qualify for tariff drawback under 19 U.S.C. § 1313(p).

25. On or about August 15, 2013, Pacific Rim applied for approval for accelerated drawback claims. Pacific Rim was notified by letter from CBP, addressed to BEHM and dated November 22, 2013, that it was approved for accelerated drawback claims for unused merchandise substitution pursuant to 19 U.S.C. § 1313(p), subject to its posting of a bond in the amount of 100% of the drawbacks claimed under the accelerated payment program.

26. No later than December 17, 2013, Pacific Rim obtained a customs bond in the amount of $1,000,000. No later than November 24, 2014, Pacific Rim's customs bond was increased to $2,000,000.

27. On or about April 3, 2014, Pacific Rim entered into a contract with a San Francisco-based drawback broker and consulting company ("Broker-1") to electronically file Pacific Rim's drawback claims with CBP. The contract called for payment to Broker-1 of $75 for every container load of exports.

THE CONSPIRACY AND SCHEME TO DEFRAUD THE UNITED STATES

28. Paragraphs 1 through 26 above are incorporated and realleged as if fully set forth here.

29. The defendants conspired to defraud the United States, specifically CBP, by filing false and fraudulent drawback claims seeking refunds totaling tens of millions of dollars in customs duties paid by Pacific Rim and other importers of certain types of plastic resins and polymers.

## MANNER AND MEANS

30. BEHM, STANKA, CLARK, LIANG, and CHOY, and others known and unknown to the Grand Jury, used the following manner and means, among others, to accomplish the objects of the conspiracy:

 a. On or about November 25, 2014, BEHM and others acting on behalf of Pacific Rim, increased the secured bond with CBP from $1,000,000 to $2,000,000, enabling additional drawback claims to remain pending at a given time with CBP under the accelerated drawback program.

 b. On November 25, 2014, Pacific Rim, with the assistance of STANKA and Broker-1, authorized and caused to be electronically filed with CBP a drawback claim in the amount of $88,678.42. Between November 25, 2014, and August 17, 2017, Pacific Rim caused to be filed at least 68 claims seeking drawbacks totaling at least $7,216,925 and received at least $6,427,902 based upon such claims.

 c. These drawback claims, signed under penalty of perjury by the drawback consulting company and based on assurances of accuracy by BEHM and others, were transmitted electronically to CBP by the consulting company. The drawback claims falsely claimed eligibility for refund of the customs duties based on the export of commercially interchangeable merchandise under the provisions of 19 U.S.C. § 1313(p), when in fact no such export of commercially interchangeable merchandise had occurred.

 d. Instead, at the direction of STANKA and CLARK, CHOY, LIANG, and others collected and received export bills of lading documenting the export of items that would not qualify for drawback under 19 U.S.C. § 1313(p), including for containers of waste tires exported to the Republic of Korea, India, Hong Kong, Vietnam, and other countries by LIANG and his companies (*See, e.g.*, Figures 1 and 2).




Figure 1                                                                Figure 2

e.  CHOY, at the direction of STANKA and CLARK, altered the export bills of lading to make them appear to qualify as the same kind and quality of material that Pacific Rim imported, including changing the description of the exports and adding HTS codes provided to him by STANKA and CLARK.

f.  CHOY, at the direction of STANKA and CLARK, further altered some export bills of lading to include Pacific Rim appear as the shipper of record, in order to fraudulently mislead CBP and others regarding the true owners and exporter of the items, which were LIANG and others.

g.  CHOY further added Automated Export System information to make the bills of lading appear to reflect the export of valuable merchandise when, in reality, LIANG and others had declared the values of many of the containers of waste tires too low to require the filing of export information.

h.  CHOY and others further altered some export bills of lading to fraudulently increase the weight of some containers listed on export bills of lading to increase the drawback claims of Pacific Rim and other clients of TPP Export.

i.  STANKA and CLARK directed other employees of TPP Export to prepare false invoices in the name of its clients to use as documentation to submit to the drawback claim

INDICTMENT                                                        7

preparer and CBP to support the clients' drawback claims. The invoices, some reflecting transactions of over $1,000,000, purported to be prepared by the clients, including Pacific Rim, and reflected fictitious sales of plastic resins to companies located in countries LIANG's and others' export containers were sent, with descriptions of materials which would qualify to offset the client's tariffs, although no transaction, exchange of funds, or export occurred between the buyer and purported seller. The commercial invoices and other documents prepared by employees of TPP Export were based on the false export bills of lading prepared by CHOY and others and pricing information provided by STANKA and were generated for the sole purpose of falsely substantiating drawback claims. Employees of TPP Export would then provide the fraudulent export bills of lading and commercial invoices to its clients to submit to its claim preparation company located in San Francisco.

    j.    Although the falsified bills of lading purported to document the export of shipping containers loaded with thousands of tons of PET resin, in reality, actual shipments contained materials that would not qualify for drawback, including the waste tires of LIANG's purported tire recycling business and exports of plastic scrap and other material.

    k.    BEHM, STANKA, and CLARK used information calculated by employees of Pacific Rim's drawback claim preparer about the amount of drawback claims that could be filed based on the company's customs bond to maximize the amounts to claim in subsequent drawback filings.

    l.    In order to increase the fraudulent drawback claims, STANKA, CLARK, and others negotiated and purchased drawback rights and import information from plastic resin importers and provided Pacific Rim with delivery certificates in order to submit additional fraudulent drawback claims in the name of Pacific Rim and TPP Export's other clients using its accelerated drawback privileges.

    m.    To conceal their roles in the conspiracy and scheme, STANKA and BEHM directed employees of Pacific Rim not to disclose to anyone the involvement of STANKA, TPP Export, or others in the preparation of drawback paperwork.

INDICTMENT        8

n.  In exchange for using its accelerated drawback program privileges and name on drawback claims, Pacific Rim received approximately 15% to 20% of the proceeds of its drawback claims. The drawback consulting company received fees for preparation of the false drawback claims on a per-container basis. STANKA, CLARK, and others, through TPP Export received the remainder of the refunds, some of which was distributed to CHOY and LIANG for their roles in providing and falsifying export documentation for submission to CBP.

o.  When claims filed in the name of Pacific Rim were approved by CBP, the third-party drawback claim preparer received the drawback checks by mail and forwarded them to Pacific Rim. Pacific Rim cashed the checks with East West Bank in the Northern District of California, and paid the preparer's fees for preparation of claims, keeping the agreed percentage of the drawback refund and wiring the remainder to TPP Export's bank account in Texas.

p.  BEHM falsely signed certifications for the drawback claim preparer, affirming that the exported items were "commercially interchangeable" with his company's imports or that the items were "subject to the same 8-digit HTSUS tariff classification," when he knew they were not.

q.  STANKA, CLARK, and others, using TPP Export and later Hammer Trading, knowingly and intentionally used falsified bills of lading provided by CHOY and false invoices to substantiate drawback claims for other clients, knowing that they would be used to substantiate false drawback claims.

31. STANKA, CLARK, CHOY, and others provided fraudulent export information to other clients of TPP Export, and later Hammer Trading, including two plastics importing companies located in Pennsylvania, hereafter called Company-1 and Company-2.

32. Between 2014 and 2018, Pacific Rim, Company-1, and Company-2 filed drawback claims with CBP totaling at least $40,005,000.

33. Fraudulent drawback claims submitted to CBP by Pacific Rim from November 2014 through 2017 totaled at least $6,427,000.

34. Drawback claims submitted to CBP by Company-1 between 2014 and 2019 totaled at least $15,717,000. Company-1 paid TPP Export at least $886,000 between 2015 and 2016. Company-1

paid Hammer Trading at least $648,000 in 2019. Drawback claims submitted to CBP by Company-1 contained fraudulent export information.

35. Drawback claims submitted to CBP by Company-2 between 2014 and 2019 totaled at least $17,861,000. Company-2 paid TPP Export at least $5,598,000 between 2015 and 2017. Company-2 paid Hammer Trading at least $8,261,000 between 2017 and 2019. Drawback claims submitted to CBP by Company-2 contained fraudulent export information.

## THE SCHEME TO DEFRAUD SHIPPING COMPANIES

36. LIANG defrauded interstate and international shipping companies of shipping fees for cargo containers and for disposal costs associated with those abandoned shipments.

## MANNER AND MEANS

37. LIANG and others known and unknown to the Grand Jury used the following manner and means, among others, to accomplish the objects of the scheme:

    a. In order to evade collection of shipping fees after the containers had been delivered to foreign ports, including the Republic of Korea, LIANG provided false information to the shipping companies about the shipper of containers, including listing the shipper as "Sigma Recycling, Inc.," "Asian International Trading," "Alpine Tire Trading, Inc.," and Transpacific Global Logistics Corp."

    b. LIANG provided false information to the shipping companies, including OOCL and Maersk Lines, about the foreign consignees that the shipping companies expected to retrieve the rubber and scrap plastic shipments. Among other things, LIANG listed defunct or dissolved consignees for shipments to ports in Asia, in order to impose disposal fees in foreign locations for such cargo that LIANG could not sell or cause to be recycled. Shipping companies, including OOCL, incurred port fees, known as "demurrage" for LIANG's unclaimed shipments.

    c. OOCL accrued at least $600,000 for destruction of 128 shipping containers sent by LIANG as ML Trading, care of Pacific Rim left in Busan, Republic of Korea.

    d. LIANG further listed sham entity names and false business addresses on shipping instructions sent to shipping companies, including OOCL and Maersk Lines, in order to evade payment of shipping fees.

  e. Maersk Lines accrued at least $230,000 in unpaid shipping fees as a result of LIANG's false and misleading shipping information.

COUNT ONE: (18 U.S.C. § 286 – Conspiracy to File False Claims)

38. Paragraphs 1 through 35 above are incorporated and realleged as if fully set forth here.

39. Beginning at a time unknown to the Grand Jury but no later than on or about July 17, 2014, and continuing to at least on or about September 27, 2019, in the Northern District of California and elsewhere, the defendants,

DALE BEHM,<br>
JOSHUA STANKA,<br>
JOSHUA CLARK,<br>
YONG HENG LIANG, and<br>
MICHAEL CHOY

entered into an agreement, combination and conspiracy with each other and with others to defraud U.S. Customs and Border Protection, an agency of the United States, by obtaining and aiding to obtain the allowance and payment of false, fictitious, and fraudulent drawback claims, knowing that such claims were false, fictitious, and fraudulent.

All in violation of Title 18, United States Code, Section 286.

COUNTS TWO THROUGH SIXTEEN: (18 U.S.C. §§ 287 and 2 – False, Fictitious, or Fraudulent Claims)

40. Paragraphs 1 through 35 above are incorporated and realleged as if fully set forth here.

41. On the dates described in the table below, in the Northern District of California and elsewhere, the defendants,

DALE BEHM,<br>
JOSHUA STANKA,<br>
JOSHUA CLARK,<br>
YONG HENG LIANG, and<br>
MICHAEL CHOY

made and presented to the United States tariff drawback claims of The Pacific Rim Traders, LLC, which claims defendants knew each to be false, submitted on the following dates and in the following amounts:

| Count | Date of Fraudulent Claim | Date U.S. Treasury Check Deposited | Claim Number | Amount of Claim |
|---|---|---|---|---|
| 2 | 11/02/2015 | 12/04/2015 | APN/11502704 | $655,850.13 |
| 3 | 4/13/2016 | 5/16/2016 | APN/11603106 | $349,031.41 |
| 4 | 4/29/2016 | 6/13/2016 | APN/11603155 | $216,340.73 |

INDICTMENT           11

| Count | Date of Fraudulent Claim | Date U.S. Treasury Check Deposited | Claim Number | Amount of Claim |
|---|---|---|---|---|
| 5 | 6/03/2016 | 7/5/2016 | APN/11603247 | $330,776.23 |
| 6 | 8/10/2016 | 9/9/2016 | APN/11603411 | $476,436.66 |
| 7 | 10/11/2016 | 11/14/2016 | APN/31620791 | $187,190.02 |
| 8 | 10/18/2016 | 12/19/2016 | APN/31620858 | $385,038.78 |
| 9 | 12/05/2016 | 1/19/2017 | APN/31620916 | $156,059.30 |
| 10 | 12/15/2016 | 1/19/2017 | APN/31620981 | $395,723.40 |
| 11 | 1/20/2017 | 2/27/2017 | APN/31721110 | $55,664.80 |
| 12 | 2/07/2017 | 3/20/2017 | APN/31721151 | $94,981.74 |
| 13 | 5/10/2017 | 6/20/2017 | APN/31721441 | $243,408.49 |
| 14 | 6/7/2017 | 7/10/2017 | APN/31721524 | $192,877.88 |
| 15 | 6/16/2017 | 7/19/2017 | APN/31721565 | $226,194.59 |
| 16 | 7/06/2017 | 8/8/2017 | APN/31721573 | $93,016.62 |

Each in violation of Title 18, United States Code, Sections 287 and 2.

COUNTS SEVENTEEN THROUGH TWENTY-EIGHT: (18 U.S.C. §§ 1343 and 2 – Wire Fraud)

42.   Paragraphs 1 through 35 are incorporated and realleged as if fully set forth here.

43.   On or about the dates provided below, in the Northern District of California and elsewhere, the defendants,

> DALE BEHM,
> JOSHUA STANKA,
> JOSHUA CLARK,
> YONG HENG LIANG, and
> MICHAEL CHOY

and others, did knowingly, and with the intent to defraud, participate in, devise, and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts and omissions of material facts with a duty to disclose, and attempting to do so, did knowingly transmit, and cause to be transmitted, the following writings, signs, signals, pictures, and sounds in interstate and foreign commerce by means of wire communications in interstate commerce:

| Count | Date | Description of Wire(s) |
|---|---|---|
| 17 | 8/19/2015 | Email correspondence between STANKA and BEHM, subject: "PRT-TPP drawback joint project" |
| 18 | 10/05/2015 | Email from LIANG to CHOY with photographic attachments, subject: "Loading pics" |
| 19 | 10/12/2015 | Email from CHOY to LIANG, subject "BLs" with attachments |
| 20 | 2/26/2016 | Email from LIANG to CHOY, subject: "Fwd: OOCL – Copy Bill of Lading for OOLU4037367930 HANJIN CHONGQING 039 w" |

INDICTMENT                                       12

| Count | Date | Description of Wire(s) |
|---|---|---|
| 21 | 2/29/2016 | Email from CHOY to STANKA, subject: "BLs 2/29" |
| 22 | 3/2/2016 | Email from employee of Pacific Rim to drawback claim preparer, BEHM, and employee of TPP Export, subject: "Engineering Resin FW: Drawback Documents" |
| 23 | 4/01/2016 | Email from employee of TPP Export to CLARK and employee of Pacific Rim, subject: "New claim docs" |
| 24 | 4/01/2016 | Email from employee of Pacific Rim to BEHM, the drawback claim preparer, and an employee of TPP Export, subject: "New Claim Docs – Engineering Resins" |
| 25 | 6/14/2016 | Email correspondence between CHOY and CLARK, subject: "Change BL" |
| 26 | 10/04/2016 | Email correspondence between STANKA, CLARK, and BEHM, subject: "RE: Contract and Forecast" |
| 27 | 3/14/2017 | Email correspondence between STANKA, CLARK, and BEHM, subject: "RE: ML Trading issue" |
| 28 | 3/15/2017 | Email correspondence involving STANKA, BEHM, and LIANG, subject: "RE: Korea Containers @ Port" |

Each in violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS TWENTY-NINE THROUGH THIRTY: (18 U.S.C. §§ 1341 and 2 – Mail Fraud)

44. Paragraphs 1 through 37(e) are incorporated and realleged as if fully set forth here.

45. On or about the dates provided below, in the Northern District of California and elsewhere, the defendant,

YONG HENG LIANG,

did knowingly, and with the intent to defraud, participate in, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts and omissions of material facts with a duty to disclose, and attempting to do so, did knowingly cause to be delivered by a private and commercial interstate carrier at the place at which it was directed to be delivered by the person or entity to whom it was addressed the following matters and things:

| Count | Date | Description of Item Transmitted |
|---|---|---|
| 29 | 2/6/2016 | 15 40' containers (Orient Overseas Container Line Bill of Lading #OOLU4037312910), description "scrap rubber," weighing 377,361 kilograms |
| 30 | 2/6/2016 | 14 40' containers (Orient Overseas Container Line Bill of Lading #OOLU4037312870), description "scrap rubber," weighing 351,728 kilograms |

INDICTMENT                                            13

Each in violation of Title 18, United States Code, Sections 1341 and 2.

COUNT THIRTY-ONE THROUGH THIRTY-EIGHT: (18 U.S.C. §§ 1957 and 2 – Money Laundering)

46. Paragraphs 1 through 43 above are incorporated and realleged as if fully set forth here.

47. On or about the dates alleged below, in the Northern District of California and elsewhere, the defendants listed in the table below did knowingly engage and attempt to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such funds having been derived from the specified unlawful activity of wire fraud in violation of Title 18, United States Code, Section 1343:

| Count | Defendants | Date | Amount | Description |
|---|---|---|---|---|
| 31 | JOSHUA STANKA | 3/14/2016 | $246,250 | Funds Transfer from TPP Export Independent Bank Account #3604 to Independent Bank Account #2388 controlled by STANKA |
| 32 | JOSHUA CLARK | 12/08/2016 | $50,000 | Funds Transfer from TPP Export Independent Bank Account #3604 to Independent Bank Account #3550 controlled by CLARK |
| 33 | JOSHUA STANKA | 2/06/2017 | $210,000 | Wire Transfer from TPP Export Bank of America Account #0885 to Bank of America Account #6192 controlled by STANKA |
| 34 | JOSHUA STANKA | 7/19/2017 | $50,000 | Check from TPP Export Bank of America Account #0885 deposited into Integrity Bank Account #2388 controlled by STANKA |
| 35 | JOSHUA CLARK | 7/26/2017 | $90,000 | Funds Transfer from Hammer Trading Independent Bank Account #1797 to Independent Bak Account #3550 controlled by CLARK |
| 36 | JOSHUA CLARK and JOSHUA STANKA | 5/21/2018 | $150,000 | Funds Transfer from Hammer Trading Independent Bank Account #1797 to First Financial Bank Account #2270 controlled by STANKA |
| 37 | JOSHUA CLARK and MICHAEL CHOY | 7/10/2018 | $20,000 | Wire Transfer from Hammer Trading Chase Account #5670 to account controlled by CHOY at Canadian Imperial Bank of Commerce |

INDICTMENT                                    14

| Count | Defendants | Date | Amount | Description |
|---|---|---|---|---|
| 38 | JOSHUA CLARK | 8/16/2019 | $130,000 | Check deposited to Chase Account #1904 from Hammer Trading Independent Bank Account #1797 |

Each in violation of Title 18, United States Code, Section 1957.

<u>COUNTS THIRTY-NINE THROUGH FORTY-TWO:</u>  (18 U.S.C. §§ 1956(a)(2)(A) and 2 – Laundering of Monetary Instruments)

48.   Paragraphs 1 through 43 above are incorporated and realleged as if fully set forth here.

49.   On or about the dates alleged below, in the Northern District of California and elsewhere, the defendants listed in the table below, did knowingly transport and transfer monetary instruments listed in the table below, from or to a place outside the United States, to or from a place inside the United States, with intent to promote the carrying on of the specified unlawful activity of wire fraud in violation of 18 U.S.C. § 1343, and in doing so did conduct the financial transactions listed in the chart below:

| Count | Defendants | Date | Amount | Description |
|---|---|---|---|---|
| 39 | YONG HENG LIANG and MICHAEL CHOY | 1/06/2018 | $4,990 | Wire Transfer from account controlled by CHOY at Toronto Dominion Bank Account to BATR Wells Fargo Account #6008 controlled by LIANG |
| 40 | YONG HENG LIANG and MICHAEL CHOY | 02/02/2018 | $7,480 | Wire Transfer from account controlled by CHOY at Canadian Imperial Bank of Commerce Account to BATR Wells Fargo Account #6008 controlled by LIANG |
| 41 | JOSHUA CLARK and MICHAEL CHOY | 7/10/2018 | $20,000 | Wire Transfer from Hammer Trading Chase Account #5670 to CHOY account at Canadian Imperial Bank of Commerce. |
| 42 | YONG HENG LIANG and MICHAEL CHOY | 1/04/2019 | $14,406.11 | Wire Transfer from account controlled by CHOY at Canadian Imperial Bank of Commerce to LIANG Bank of America Account #2353 |

Each in violation of Title 18, United States Code, Section 1956(a)(2)(A).

//

INDICTMENT                                                     15

COUNT FORTY-THREE: (18 U.S.C. §§ 1519 and 2 – Falsification of Records to Obstruct Investigation)

50. Paragraphs 1 through 49 are realleged as if fully set forth herein.

51. On or about October 10, 2017, in the Northern District of California and elsewhere, the defendant,

YONG HENG LIANG

knowingly altered, falsified, and made false entries in a record, document, and tangible object, namely creating and causing to be mailed to an employee of the Department of Homeland Security a fabricated, false, and backdated purchase order for 100 containers loaded with waste tires, with the intent to impede, obstruct, and influence an actual and contemplated investigation and the proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the Department of Homeland Security.

All in violation of Title 18, United States Code, Section 1519 and 2.

FORFEITURE ALLEGATION:

52. The factual allegations contained in Paragraphs One through Forty-Nine are hereby realleged for the purpose of alleging forfeiture to the United States of America pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c); and Title 18, United States Cade, Section 982(a)(1).

53. Upon conviction of the offenses in Counts Seventeen through Thirty of this Indictment, the defendants,

DALE BEHM,
JOSHUA STANKA,
JOSHUA CLARK,
YONG HENG LIANG, and
MICHAEL CHOY

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to a violations of Title 18, United States Code, Sections 1341 and 1343. The United States will also seek a forfeiture money judgment against each defendant equal to the value of any property, real or personal, which constitutes or is

INDICTMENT                          16

derived from proceeds traceable to these offenses.

54. Upon conviction of the offenses in Counts Thirty-One through Forty-Two of this Indictment, the defendants,

> JOSHUA STANKA,
> JOSHUA CLARK,
> YONG HENG LIANG, and
> MICHAEL CHOY

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in a violation of Title 18, United States Code, Sections 1956 and/or 1957, or any property traceable to such property. The United States will also seek a forfeiture money judgment against each defendant equal to the value of any property, real or personal, involved in these offenses, or property traceable to such property.

55. If any of the property described above, as a result of any act or omission of the defendant:

  a. cannot be located upon exercise of due diligence;
  b. has been transferred or sold to, or deposited with, a third party;
  c. has been placed beyond the jurisdiction of the court;
  d. has been substantially diminished in value; or
  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

//

//

//

//

INDICTMENT                      17

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); Title 28, United States Code, Section 2461(c); Title 21, United States Code, Section 853; and Federal Rule of Criminal Procedure 32.2.

A True Bill

\_\_\_\_\_/s/_____
FOREPERSON

Dated: August 11, 2020

DAVID L. ANDERSON
United States Attorney

\_\_\_\_\_/s/_____
COLIN SAMPSON
Assistant United States Attorney