DREW FINDLING - PHV-21739-2019
Findling Law Firm PC
3490 Piedmont Road Suite 600
Atlanta, GA 30305
(404) 460-4500
drew@findlinglawfirm.com

Attorney for Joshua Clark

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>    Plaintiff )<br>)<br>vs. )<br>)<br>)<br>)<br>DALE BEHM; and JOSHUA CLARK )<br>    Defendants. )<br>_____ ) | CASE NO. 3:20-CR-00321 EMC<br><br>NOTICE OF MOTION TO SUPPRESS STATEMENTS |

## **MOTION TO SUPPRESS DEFENDANT'S STATEMENTS**

COMES NOW Defendant Joshua Clark, by and through undersigned counsel and moves this court to suppress statements made by him to investigators on August 7, 2019. The statements were obtained from Mr. Clark in violation of the Fifth Amendment to the United States Constitution, and thereby should be suppressed.

DATED: October 14, 2021                    Respectfully submitted,


                                                        *s/Drew Findling*
                                                      Drew Findling
                                                      PHV-21739-2019

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.       INTRODUCTION

Defendant Joshua Clark ("Mr. Clark") was subject to custodial interrogation on August 7, 2019 when two Special Agents showed up at his door and began questioning him. Because their conversation was violative of his Fifth Amendment Rights, Mr. Clark respectfully requests that this court exclude the statements from evidence in this case.

### II.      FACTUAL BACKGROUND

On August 7, 2019, Special Agents Justin Fletcher and Victoria Bethany appeared at Mr. Clark's home in order to obtain statements from him regarding an ongoing investigation.[1] Mr. Clark spoke with the Special Agents for approximately forty-five minutes. The agents questioned Mr. Clark about a wide range of topics surrounding his involvement with Trans Pacific Polymers and his relationship to Joshua Stanka. Mr. Clark, at the time the interview began, was not advised of his right to counsel, right to remain silent, or that he was free to terminate the interview.

### III.     ARGUMENT

Under the Fifth Amendment to the United States Constitution, a person must not be "compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. The Supreme Court, in Miranda v. Arizona held that "prosecution may not use statements . . . stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444.  The purposes of the Miranda safeguards are to ensure "that the police do not coerce or trick captive suspects into confessing, relieving the inherently compelling pressures generated by the custodial setting itself." Id. In order for the Miranda safeguards

---

[1] While the audio file of this interaction has been made available, in the discovery received to date undersigned counsel has not received any written memorialization of this interview.

to be triggered, the suspect must be "in custody." Whether a suspect is in custody for <u>Miranda</u> purposes is an objective determination involving two discrete inquiries: "[f]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation?" <u>Thompson v. Keohane</u>, 516 U.S. 99, 112 (1995).

When the special agents arrived at Mr. Clark's door, they first told him they were there to ask him some questions about Pacific Rim Traders. Based on that, he entered into a conversation with them. The agents did not inform him that he had the right to counsel, that he was free to leave or stop the interview at any time, nor that anything may be used against him, as required by Miranda. Mr. Clark had no reason to suspect that they were actually looking into Trans Pacific Polymers, a completely separate entity, nor that Mr. Clark was a target himself. The agents quickly turned to Mr. Clark himself as the subject of their questioning and he was clearly caught off guard.

After the agents had already been questioning Mr. Clark for six minutes, he said, obviously confused, "I don't know . . . I'm a little caught off-guard . . . do I need to have an attorney with me? What are we . . .?" Only in response to Mr. Clark's question did the agents advise him that he could have an attorney if he felt he needed one, and that they could stop at any time. Within the same breath, the agents continued their questioning. During this conversation, it is clear based on this interaction that a reasonable person would not have felt free to leave. <u>Thompson</u> 516 U.S. 99 at 112.

At no point prior to Mr. Clark inquiring whether he needed a lawyer was he given any of the admonishments required by <u>Miranda</u> and its progeny. Further, the agent's response to Mr. Clark's inquiry did not adequately apprise Mr. Clark of his right to counsel, right to remain silent, or the potential use of his statements against him.

## IV.     CONCLUSION

Mr. Clark was subject to custodial interrogation when special agents visited his home on August 7, 2019 and questioned him. The agents failed to advise Mr. Clark of his Miranda rights under the Fifth Amendment. Thus, the statements obtained by special agents should be suppressed.

                                                  Respectfully submitted,

Dated: October 14, 2021

                                                  *s/Drew Findling*
                                                  Drew Findling
                                                  PHV-21739-2019
                                                  Findling Law Firm P.C.
                                                  3490 Piedmont Road, Suite 600