AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Northern District of California

**UNDER SEAL**

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
INFORMATION ASSOCIATED WITH
DAVID.BURBIDGE@TRANSPACIFICPOLYMERS.COM;
JJS@TRANSPACIFICPOLYMERS.COM;
JSTANKA@GMAIL.COM;
JOSH.CLARK@TRANSPACIFICPOLYMERS.COM

Case No.

**3  19  70915**  **LB**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachments A

located in the Northern _____ District of California _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

**FILED**
JUN 12 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 286 | - Conspiracy to Defraud the United States by False Claims |
| 18 U.S.C. Section 1341 | - Mail Fraud |
| 18 U.S.C. Section 1343 | - Wire Fraud |
| 18 U.S.C. Section 1956(h) | -Conspiracy to Launder Money |
| 18 U.S.C. Section 1957 | -Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity |

The application is based on these facts:
See attached Affidavit of Special Agent Justin Fletcher in Support of Application for Search Warrant

Approved
As To Form: _____
Colin Sampson, AUSA

_____
*Applicant's signature*

Justin Fletcher, Special Agent, IRS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 12 2019

_____
*Judge's signature*

City and state: San Francisco, California

Hon. ~~Sallie Kim~~, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Justin Fletcher, a Special Agent of the Department of Treasury, Internal Revenue Service, being duly sworn, hereby declare as follows:

### OVERVIEW AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with the following email accounts (the "**Subject Accounts**"):

- **david.burbidge@transpacificpolymers.com**   **(SUBECT EMAIL ACCOUNT-1)**
- **jjs@transpacificpolymers.com**   **(SUBECT EMAIL ACCOUNT-2)**
- **jstanka@gmail.com**   **(SUBECT EMAIL ACCOUNT-3)**
- **josh.clark@transpacificpolymers.com**   **(SUBECT EMAIL ACCOUNT-4)**

that are stored at premises controlled by Google, LLC, an email provider located at 1600 Amphitheatre Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, LLC to disclose to the government copies of the information (including the content of communications) further described in Section II of Attachment B. Upon receipt of the information described in Section II of Attachment B, government-authorized persons will review that information to locate the items described in Section III of Attachment B.

2.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Pacific Rim Traders, LLC (PRT), ML Trading Group, Inc., (ML Trading), Bay Area Tire Recycling, Inc. (BATR), N.F. Stroth & Associates, LLC (N.F. Stroth), TPP Export America, LLC also doing business as Trans Pacific Polymers (TPP), and others have violated:

- Title 18 U.S.C. Section 286 – Conspiracy to Defraud the United States by False Claims

- Title 18, U.S.C. Section 1341 – Mail Fraud
- Title 18 U.S.C. Section 1343 - Wire Fraud
- Title 18 U.S.C. Section 1956(h) - Conspiracy to Launder Money
- Title 18 U.S.C. Section 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity

There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## AFFIANT BACKGROUND

3.      I am employed as a Special Agent (SA) of the United States Department of the Treasury, Internal Revenue Service – Criminal Investigation, and am currently assigned to the Oakland field office. I have been a SA for more than 10 years. As an Internal Revenue Service (IRS) Special Agent, my duties include the investigation of criminal violations of the Internal Revenue Code (Title 26, United States Code), Money Laundering Statutes (Title 18, United States Code), Bank Secrecy Statutes (Title 31, United States Code), and other related offenses.

4.      I have held the position of IRS Special Agent since February 2006. I completed the required Special Agent training at the Federal Law Enforcement Training Center in Glynco, Georgia. This training included eleven weeks of criminal investigative training including courses in law enforcement techniques, federal criminal statutes, conducting criminal investigations, and the execution of search warrants. This training also included instruction in the law of search and seizure under the Fourth Amendment of the United States. In addition to the criminal investigative training, I completed a Special Agent Basic Training course lasting thirteen and one-half weeks, which included courses in financial investigative techniques, legal principles, and statutes representing criminal violations of the United States Code as enumerated in Titles 18, 26, and 31. In 2003, I obtained a B.S. in Statistics from the University of Tennessee, Knoxville. In 2004, I obtained a Master's of Accountancy from the University of Tennessee, Knoxville.

5.      I have been involved in numerous investigations of alleged violations of the Internal Revenue Code ("IRC"), as well as money-laundering statutes, identity theft, tax evasion, and related offenses. I have participated in numerous interviews of witnesses and have been the affiant of dozens of federal search warrants involving suspected criminal violations where records, of the type involved in this investigation, were seized.

6.      From my training and experience, I have learned that Google, LLC provides web based Internet electronic mail ("email"), and that stored electronic communications, including opened and unopened email for Google, LLC may be located on the server computers located at Google, LLC. Further, I am aware that computers located at Google, LLC contain stored electronic information and stored electronic communications belonging to unrelated third parties. Accordingly, this affidavit and application for search warrant seeks authorization solely to search for the computer accounts and/or files identified herein and seek authorization to do so solely following the procedures described.

7.      The facts contained within this affidavit come from my personal observation, my training and experience, information obtained from other agents, including agents of the U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), witnesses, government data, government sources, and research of public sources. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.      I believe that employees of N.F. Stroth, PRT, ML Trading, BATR, TPP, and others conspired to submit false claims to CBP. I believe that PRT was a client of N.F. Stroth. I believe that employees of N.F. Stroth have certified claims for refunds to CBP that contained materially false information. I further believe the claims submitted by N.F. Stroth on behalf of PRT intentionally misrepresented the contents of exports and the PRT's qualification for refunds they would otherwise not be entitled to receive. Specifically, claimant forms indicated plastic material (polyethylene terephthalate, or "PET") was exported, and lists descriptions with Harmonized Tariff Schedule (HTS) Chapter 39 for Plastics and Articles Thereof. However,

inspection of containers and supporting documents indicate that the actual items exported included shipping containers full of used rubber tires, as well as metal scrap, plastic scrap, empty containers, and dried grains. I believe TPP modified bills of ladings and other export documentation to make it appear that exports were commercially interchangeable products of imported material. I believe TPP understood that by including modified descriptions of containers and adding descriptions on bills of lading with HTS Chapter 39 codes that PRT would qualify for a duty drawback. I believe the false information submitted to CBP allowed N.F. Stroh's client, PRT, to receive significant funds from the Department of Treasury that would not have otherwise been authorized. In exchange, PRT would share the duty drawback with TPP and N.F. Stroh and others involved in the scheme.

## APPLICABLE STATUTES

9.      Title 18, United States Code, Section 286 reads in pertinent part: "Whoever enters into any agreement, combination, or conspiracy to defraud the United States, or any department or agency thereof, by obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim, shall be fined under this title or imprisoned not more than ten years, or both.

10.      Title 18, United States Code, Section 1341 reads in pertinent part: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the

direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

11.     Title 18, United States Code, Section 1343 reads in pertinent part: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

12.     Title 18, United States Code, Section 1956(h) reads in pertinent part:   Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

13.     Title 18, United States Code, Section 1957 reads in pertinent part: Whoever knowingly engages or attempts to engage in monetary transactions in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity shall be punished by fine or imprisonment for not more than ten years or both. The court may impose to be not more than twice the amount of the criminally derived property involved in the transaction.

## JURISDICTION

14.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

15.     Under 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## INFORMATION ABOUT GOOGLE, LLC

16.     In my training and experience, I have learned that Google, LLC provides a variety of on-line services, including electronic mail ("email") access, to the public. Google, LLC allows subscribers to use other domain or other email address accounts, like the email accounts listed in Attachment A. Subscribers obtain an account by registering with Google, LLC. During the registration process, Google, LLC asks subscribers to provide basic personal information. Therefore, the computers of Google, LLC are likely to contain stored electronic communications (including retrieved and unretrieved email for Google, LLC subscribers) and information concerning subscribers and their use of Google, LLC services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

17.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

18.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account

(such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

19.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

20.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed

or used. For example, as described below, email providers typically log the Internet Protocol

(IP) addresses from which users access the email account, along with the time and date of that

access. By determining the physical location associated with the logged IP addresses,

investigators can understand the chronological and geographic context of the email account

access and use relating to the crime under investigation. This geographic and timeline

information may tend to either inculpate or exculpate the account owner. Additionally,

information stored at the user's account may further indicate the geographic location of the

account user at a particular time (e.g., location information integrated into an image or video sent

via email). Last, stored electronic data may provide relevant insight into the email account

owner's state of mind as it relates to the offense under investigation. For example, information in

the email account may indicate the owner's motive and intent to commit a crime (e.g.,

communications relating to the crime), or consciousness of guilt (e.g., deleting communications

in an effort to conceal them from law enforcement).

### FACTS SUPPORTING PROBABLE CAUSE

#### Search Warrant and Seized Evidence

21.     On May 16, 2019, United States Magistrate Judge, Honorable Sallie Kim, signed

a federal search and seizure warrant for multiple email accounts hosted by Microsoft (Herein

incorporated as Exhibit A). The facts establishing probable cause listed in paragraphs 23

through 93 are incorporated by reference herein for the purpose of establishing probable cause.

22.     I reviewed emails provided by Microsoft pursuant to the May 16, 2019 federal

search and seizure warrant including emails sent to and from:

a.      Margaret Palacios (Palacios), an employee of Pacific Rim Traders

b.      Sarah Stroth, an employee of N.F. Stroth

## TPP Export Americas, LLC Involvement

23.     According to filings with the Texas Secretary of State, TPP Export Americas, LLC (TPP) was registered in Texas with a mailing address of 5757 Flewellen Oaks Ln., Ste 203, Fulshear, Texas. The registered office street address was listed as 440 Cobia Drive, Suite 1003, Katy, Texas.  Based on tax filings, some of the employees of TPP included: David Burbidge (Burbidge), Joshua Stanka (Stanka), and Joshua Clark (Clark).

24.     According to an unexecuted agreement between TPP and their client, Toray Resin (TREC), "TPP is experienced [...] that it has successfully recovered Drawbacks which have been liquidated by the Department of Homeland Security." The unexecuted agreement further states, "TPP, as exporter of record, agrees to substitute, and therefore export, articles of the same kind or quality as the Imported Articles."

25.     I believe TPP purchased other companies' drawback rights. Based on conversations with TREC, TPP paid TREC 50% of the tariffs that TREC paid to import the material.  TREC paid TPP a 5% commission. TPP subsequently sent the import information to PRT, and possibly other companies, to file drawback claims.

26.     As discussed above, I believe TPP entered into one or more agreements to be the "exporter of record" and purchased drawback rights from importers.  I believe that TPP provided import and export information that it obtained from TREC and others to PRT and/or N.F. Stroth in support of drawback claims as discussed more fully in Exhibit A.

27.     I have reviewed bills of ladings that are identified by a unique export alphanumeric identifier from two separate sources.  The first source is from bills of lading provided by shippers to IRS Special Agents and DHS Special Agents.  The second source is from bills of lading used to claim drawback claims.  The bills of lading used to claim drawback

claims were emailed from TPP to PRT and later sent to N.F. Stroth for the preparation of the claim. N.F. Stroth submitted the drawback claims to CBP. From my review, I have determined that the bills of lading submitted to CBP were altered and did not match the bills of lading maintained by the shippers.

28.     From information I have reviewed, it appears that TPP is involved in altering the bills of lading and sending them to PRT. I believe that by modifying the bills of ladings, TPP believed PRT would appear to qualify for the claimed duty drawback. Based on emails and documents reviewed, TPP was compensated by PRT after drawback claims were submitted and duty drawback refund checks were received by PRT.

29.     TPP received a substantial portion of the drawback claims from PRT. I reviewed emails that indicate TPP received 85% of the duty drawbacks filed by N.F. Stroth on behalf of PRT.

### TPP's Role Regarding Containers Inspected in South Korea

30.     As discussed in Exhibit A, containers shipped to South Korea were physically inspected and the contents were determined to be used, rubber tires.

31.     The shipping company, Orient Overseas Container Line (OOCL) provided original shipping documents for the shipments to South Korea, including bills of ladings, to IRS Special Agents and DHS Special Agents. The exporter is listed as "ML Trading Group, Inc. C/O: Pacific Rim Traders, LLC".

32.     I traced the bills of ladings' unique alphanumeric identifier to duty drawback claims submitted by N.F. Stroth on behalf of PRT. The submitted claim documents to CBP listed Harmonized Tariff Schedule (HTS) code of Chapter 39 – Plastics and Articles Thereof corresponding to each export. As discussed above and in Exhibit A, the containers were filled

with used, rubber tires. I do not believe used, rubber tires are classified under Chapter 39 – Plastics and Articles Thereof in the HTS.

33.     I reviewed email correspondence regarding the bills of ladings for the shipments physically inspected in Busan, South Korea. The bills of ladings were sent from TPP to PRT and subsequently from PRT to N.F. Stroth. The bills of ladings contained unique alphanumeric identifiers.

34.     On April 1, 2016 Burbidge (**david.burbidge@transpacificpolymers.com**) emailed Palacios and copied Clark (**josh.clark@transpacificpolymers.com**) with attachments containing invoices and bills of lading listed below:

   a.     CERTIFICATE OF DELIVERY - DAIKIN - PRT.pdf

   b.     CBP 755  ATTACHMENT-DAIKIN-PRT.xlsx

   c.     OOLU4037312870 BL (PRT-DAIKIN).pdf

   d.     OOLU4037312870 - PRT INVOICE.pdf

   e.     OOLU4037312910 BL (PRT-DAIKIN).pdf

   f.     OOLU4037312910 - PRT INVOICE.pdf

35.     The bills of ladings attached to the email on April 1, 2016 from Burbidge to Palacios included bills of ladings with unique export alphanumeric identifiers OOLU4037312870 and OOLU4037312910.

36.     On April 1, 2016, Palacios emailed Henkels and Josephine Domingo from N.F. Stroth and copied Dale Behm (Behm) from PRT, and Burbidge (**david.burbidge@transpacificpolymers.com**) from TPP with the same five attachments listed above that Burbidge mailed to Palacios, including the bills of ladings for OOLU4037312870 and OOLU4037312910.

37.     I compared the bills of ladings sent from TPP to PRT and subsequently to N.F. Stroth to the original bills of ladings provided by the shipping company, OOCL, to IRS and DHS Special Agents. The contents listed on original bills of lading (OOLU4037312870 and OOLU4037312910) from OOCL are listed as scrap rubber. The bills of ladings that Burbidge (**david.burbidge@transpacificpolymers.com**) sent to PRT list: "PTFE RESIN 3904.61.00 Recycled Plastic" and "ETFE RESIN 3904.69.50 Recycled Plastic" as the description respectively. Bills of ladings used to submit drawback claims to CBP are substantially different from the original bills of lading.

38.     I believe TPP altered the description of the contents of the containers because TPP believed PRT would be approved for a duty drawback based on the modified descriptions.

39.     I traced these bills of ladings to claims submitted by N.F. Stroth to CBP: APN-31721110, APN-11603155, APN-31721524 and APN-11603106. These claims resulted in duty drawback refund checks from the Department of Treasury. Other bills of ladings were also included in the drawback claims. The checks were deposited by PRT. The four claim refunds are summarized below:

| Claim # | Amount – Check from Department of Treasury |
|---|---|
| APN-31721110 | $55,654.80 |
| APN-11603155 | $216,340.73 |
| APN-31721524 | $192,877.88 |
| APN-11603106 | $349,031.41 |

40.     Based on conversations with DHS, these containers were abandoned in South Korea.

41.     On March 3, 2017 Raymond Fung, CEO of PRT, emailed Stanka

(**jjs@transpacificpolymers.com**): " I just wanted to follow up and see if you had a chance to

talk with ML Trading to see what will happen with the abandon shipments."

     a.     On March 10, 2017 Stanka (**jjs@transpacificpolymers.com**) responds, "I

     have and all they've been able to tell me is that they are working on it.  Hope fully

     we can get the situation resolved soon."

     b.     Based on this email exchange, I believe Stanka has a relationship with ML

     Trading and is involved in drawback scheme. I believe Stanka was aware of the

     shipment of tires to South Korea and was an active participant in the duty

     drawback scheme.

42.     On October 31, 2014, Liang emailed Behm and copied Palacios and Eric Chen: "I

am just checking in with you that we will be providing BLs to you starting next week. Most of

our shipments have a cutoff date of either Thursday or Friday every week. Please advise how

many loads/containers do you need every week no later than Wednesday"

     a.     I believe "BLs" discussed above is referring to bills of ladings.

     b.     As discussed in Exhibit A, Colin Liang (Liang) is the Director of ML

     Trading. ML Trading was listed as the exporter for the shipments of containers to

     Busan, South Korea. Liang also owns and operates BATR, a tire recycling facility

     in Hayward, California. I believe Liang shipped used, rubber tires to Busan, South

     Korea and provided the bills of ladings for the shipments. I believe the bills of

     ladings were subsequently altered by TPP or others.

### Additional Bills of Ladings

43.     I reviewed additional emails containing bills of ladings sent from TPP to PRT and

subsequently to N.F. Stroth to file duty drawback claims.

44.    I compared the bills of ladings in the emails to the original bills of ladings that the shippers provided to IRS Special Agents.

45.    CMA CGM, a shipping company, provided bills of ladings directly to IRS Spcial Agents. Based on documentation reviewed from CMA CGM and emails reviewed, I believe that TPP altered the bills of ladings for exports. I believe that TPP added HTS codes to the bills of ladings and altered the description of contents of the containers. Four bills of ladings are summarized below:

46.    I reviewed several bills of ladings received from CMA CGM that contained different information than the bills of ladings provided by TPP to PRT. The bills of ladings were sent from Burbidge (**david.burbidge@transpacificpolymers.com**) and copied to Clark (**josh.clark@transpacificpolymers.com**) or sent from Stanka (**jjs@transpacificpolymers.com**). The emails were sent to employees of PRT. Three bills of ladings are summarized below:

| Bill of Lading | Description – CMA CGM | Description – TPP | Date Emailed by TPP | Emailed by |
|---|---|---|---|---|
| NAM2377636 | Plastic Scrap Packages | Recycled Plastic Polycarbonate 3907.40.00 | April 15, 2016 | Burbidge, copied to Clark |
| NAM2374901 | Plastic Scrap Packages | PPS Resin 3911.90.25 Recycled Plastic | April 15, 2016 | Burbidge, copied to Clark |
| NAM2047557 | SBS Bleached Board | Recycled Plastic ABS Resin 3903.30.00 | August 9, 2017 | Stanka |

47.    I believe the descriptions were modified by TPP or others and provided to PRT. Based on previous emails reviewed and my understanding of the parties involved in the scheme, the bills of ladings were sent from PRT to N.F. Stroth to submit drawback claims.

48.    I reviewed the claims submitted by N.F. Stroth to CBP on behalf of PRT. The

claim documents list all exports under HTS Chapter 39 Plastics and Articles Thereof. As discussed in Exhibit A, PRT filed drawback claims under an Unused Merchandise Agreement, meaning that in order to receive accelerated payment on drawback claims, PRT agreed that it would only claim drawbacks for exports of qualifying unused merchandise.

49.     I do not believe that the true contents of the containers would qualify PRT to receive a drawback. Additionally, as discussed below, I do not believe "scrap" qualifies to be claimed for PRT's drawbacks.

50.     I believe that the shipper/exporter was also altered on the bills of ladings to reflect PRT. The shippers identified on the originals bills of lading are listed below. The modified bills of lading all list PRT as the export.

| Bills of Lading | Shipper Listed on Original Bills of Ladings |
| --- | --- |
| NAM2377636 | Greenvironmental Solutions, Inc |
| NAM2374901 | Greenvironmental Solutions, Inc |
| NAM2254454 | Sancro International Inc |
| NAM2047557 | Meadwestvaco Corporation |

**Other E-Mails**

51.     I believe Stanka used a business email account and personal email account to conduct business. As discussed above, Stanka utilized **jjs@transpacificpolymers.com** as his business email. I believe Stanka also utilized **jstanka@gmail.com** to discuss duty drawbacks.

52.     On March 26, 2014 Behm emailed Jaques Robichaud, Palacios, and Eric Chen from PRT and copied Stanka (**jstanka@gmail.com**): "No one is to talk to anyone about DDB, customs, Jetway, anyone......All communication thru Josh only and myself!"

a.     I believe "DDB" refers to duty drawback claims.

53.     On April 11, 2014, Behm emailed Stanka (**jstanka@gmail.com**): "Just received a letter from US Customs and will sent to you ASAP. Issue: Material listed as "crap" does not qualify under 3907.60 Need to provide document which verifies the export material........"

        a.      I believe Behm is referring to an issue with material listed as "scrap". I believe that descriptions of containers on bills of ladings are modified by TPP or others from "scrap" to "recycled." I believe that by making these adjustments PRT believed they would be approved for a duty drawback with CBP.

54.     On September 29, 2014, Stanka (**jjs@transpacificpolymers.com**) wrote, "has stroth been comfortable with all documentation thus far? sorry about taking so long to get those other docs. I traveled all last week so im just pulling everything together."

        a.      Palacios responds, "We will call them tomorrow and get to know the update, we will let you know tomorrow."

        b.      Stanka (**jjs@transpacificpolymers.com**) responds later "Sounds good just want to make sure everything is proceeding smoothly"

55.     On April 27, 2017 Stanka (**jstanka@gmail.com**) emailed Behm, "Hey my friend Working on this new claim for you.  For those next four claims we have coming in you can wait until all checks are received then just do one wire. But it will be GOING TO OUR INTEGRITY BANK OF TEXAS ACCOUNT."

## CONCLUSION

56.     Based on the information provided above, I have probable cause to believe that TPP participated in a scheme to defraud the United States by falsifying bills of lading and other export documentation. The falsified export documentation was used to submit duty drawback claims that allowed PRT to recoup tariffs paid on its imports of PET resin when in reality drawback-ineligible waste tires and scrap were exported to South Korea and other foreign

destinations.

57.     Based on the information above, there is probable cause to believe that a search of the information described in Attachment A will reveal the items described in Attachment B, which are evidence, fruits, and instrumentalities of violations of Title 18 U.S.C. Section 286 (Conspiracy to Defraud United States through False Claims),  Title 18 U.S.C. Section 1341 (Mail Fraud),  Title 18 U.S.C. Section 1343 (Wire Fraud); and  Title 18 U.S.C. Section 1956(h) (Conspiracy to Launder Money), and Title 18 U.S.C. Section 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity). Therefore, I respectfully request that the Court issue the proposed search warrant.

Justin Fletcher, Special Agent
Criminal Investigation
Internal Revenue Service
Department of Treasury


Subscribed and sworn before me on this ___12___ day of June 2019.


HONORABLE LAUREL BEELER
United States Magistrate Judge

## ATTACHMENT A
## PROPERTY TO BE SEARCHED

This warrant applies to information associated with the accounts:

- **david.burbidge@transpacificpolymers.com**

- **jjs@transpacificpolymers.com**

- **jstanka@gmail.com**

- **josh.clark@transpacificpolymers.com**

that are stored at premises controlled by Google, LLC, a company headquartered at

1600 Amphitheatre Parkway, Mountain View, California.

## ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

To ensure that agents search only account(s) described in Attachment A, this search warrant seeks authorization to permit employees of Google, LLC (the "Provider") to assist agents in the execution of the warrant.  To further ensure that agents executing this warrant search only the account(s) described as **david.burbidge@transpacificpolymers.com,** **jjs@transpacificpolymers.com, jstanka@gmail.com, josh.clark@transpacificpolymers.com** the following procedures have been implemented:

### I.  Search Procedure

The search warrant will be presented to Google, LLC's personnel, who will be directed to isolate those accounts and files described in Section II below:

1.  In order to minimize any disruption of computer service to innocent third parties,  Google, LLC's employees will create an exact duplicate of the accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein;

2.  Law enforcement personnel will thereafter review the information received stored and identify and copy only the information authorized to be further copied as described in Section III below; and

3.  Law enforcement personnel will then seal the original duplicate of the accounts and files received from Google, LLC's, employees and will not further review the original duplicate absent an order of the Court.

In the review of information provided pursuant to this warrant by Google, LLC, the government must make reasonable efforts, to the extent required by the Fourth Amendment, to use methods and procedures that will locate and expose those categories of files, documents, or other

electronically stored information that are identified with particularity in the warrant while minimizing exposure or examination of irrelevant or attorney-client privileged files to the extent reasonably practicable.

## II. Files and Accounts to be Copied by Provider's Employees

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, LLC, regardless of whether such information is located within or outside of the United States, and including any chats, records, files, logs, or information that has been deleted but is still available to Google, LLC or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google, LLC is required to disclose the following information to the government for each account or identifier listed in Attachment A:

1. The contents of all emails and chat sessions stored in the account from January 1, 2014 to December 31, 2017 including copies of emails and chats sent to and from the account, draft emails/chats, the source and destination addresses associated with each email/chat, the date and time at which each email/chat was sent, and the size and length of each email/chat;

2. All records or other information regarding the identification of the account, including full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

3. All subscriber records for the account;

4. All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, documents, and files;

5.      All records associated with the uploading, sending, and receipt of images, documents, and files, including all time and date stamps, device information, and IP addresses for each interaction;

6.      All records pertaining to communications between Google, LLC and any person regarding the account, including contacts with support services and records of actions taken; and

7.      All records or other information regarding the user's account settings.

**The Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.**

### III. Information to be Further Copied by Law Enforcement Personnel

All information described above in Section II that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18 U.S.C. Section 286 (Conspiracy to Defraud the United States by False Claims), Title 18, U.S.C. Section 1341 (Mail Fraud),  Title 18 U.S.C. Section 1343 (Wire Fraud); Title 18 U.S.C. Section 1956(h) (Conspiracy to Launder Money); and Title 18 U.S.C. Section 1957 (Money Laundering) those violations involving owners, employees, or contractors of Pacific Rim Traders, LLC, ML Trading Group, Inc., Bay Area Tire Recycling Inc., Asian International Trading, TPP Export America, LLC, Trans Pacific Polymers, LLC,  Margaret Palacios, Dale Behm, Neill Stroth, Sarah Stroth, Villfredy Alvarenga, Yong Heng (Colin) Liang, Brian Henkels, Joshua Stanka, Joshua Clark, and David Burbidge (the co-conspirators) occurring from January 1, 2014 to December 31, 2017, specifically, for each account or identifier listed on Attachment A, information pertaining to the following matters:

1.      Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, information necessary to prepare drawback claims,

documentation and support material of imports or exports, invoices, bills of lading, other shipping related documents.

2.    Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, knowledge of drawback regulations, the harmonized tariff schedule, or Department of Homeland Security and Customs and Border Protection regulations and requirements.

3.    Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, modification or knowledge of modification of bills of ladings, invoices, contents of containers, shipping documents, duty drawback claim documents, and exported materials.

4.    Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, the preparation of company books and records, the preparation of personal income tax returns, business income tax returns, refund amounts, methods of payment, bank account information, status of prepared and/or filed income tax returns, and knowledge of income tax laws and regulations.

5.    Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, information regarding law enforcement efforts to investigate or obtain information regarding any of the violations discussed above, influence and/or intimidate potential witnesses, and/or efforts to conceal or hide evidence relating to violations discussed above.

6.    Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, information regarding the acquisition of funds received from the drawback claims including bank account information, commission payments, bank account set up instructions, individuals listed with access to bank

accounts, method of deposits, acceptance from federal authorities, and information regarding individuals with ability and access to virtually deposit checks.

7. Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, information regarding agreements and business contracts between co-conspirators and others, including monetary agreements and non-monetary agreements.

8. Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, personal identifying information, names, routing numbers, bank account numbers, addresses, dollar amounts, Moneygram, Western Union, MoneyPak, wiring instructions, pre-paid debit cards, or any other details related to financial accounts or financial transactions.

9. Records that show who created, used, or communicated with the account, including records about their identities and whereabouts, insofar as this information constitutes evidence of a violation of Title 18 U.S.C. Section 286 (Conspiracy to Defraud the United States by False Claims), Title 18, U.S.C. Section 1341 (Mail Fraud),  Title 18 U.S.C. Section 1343 (Wire Fraud); Title 18 U.S.C. Section 1956(h) (Conspiracy to Launder Money); and Title 18 U.S.C. Section 1957 (Money Laundering).

10. Identification of other accounts, domains, IP addresses, and computers owned or controlled by the same individual(s) controlling each account listed at Attachment A; and

11. The following documents that tend to establish the identity of the person or persons in control of the account: identification documents (such as driver's licenses or passports), photographs, bills, receipts, vehicle registration documents, statements, leasing agreements, personal address books, calendars, daily planners, and personal organizers.