AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

**FILED**

OCT 25 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFOR
JSC

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*
IN THE MATTER OF THE SEARCH OF INFORMATION
ASSOCIATED WITH MCHOY.SCM@GMAIL.COM;
JOSH.CLARK@HAMMERTEXAS.COM; JS@TRFPI.COM;
JH@TRFPI.COM; CV@TRFPI.COM; JSTANKA@GMAIL.COM

)
)
)
)
)
)

Case No.  3  19  71763

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachments A-1 and A-2

located in the  Northern _____ District of  California _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachments B-1 and B-2

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 286 | - Conspiracy to Defraud the United States by False Claims |
| 18 U.S.C. Section 550 | -False Claim for Refund of Duties |
| 18 U.S.C. Section 1341 | -- Mail Fraud |
| 18 U.S.C. Section 1343 | -- Wire Fraud |
| 18 U.S.C. Section 1956(h) | -Conspiracy to Launder Money |
| 18 U.S.C. Section 1957 | -Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity |

The application is based on these facts:

See attached Affidavit of Special Agent Benjamin Kurko in Support of Application for Search Warrant

Approved
As To Form:

Colin Sampson, AUSA

*Applicant's signature*

Benjamin Kurko, Special Agent, IRS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 25 Oct 2019

*Judge's signature*

City and state: San Francisco, California

Hon. Bernard Zimmerman, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Benjamin Kurko, a Special Agent of the Department of Treasury, Internal Revenue Service, being duly sworn, hereby declare as follows:

## OVERVIEW AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with the following email accounts (the "**Subject Accounts**"):

- **mchoy.scm@gmail.com**             (Attachment A-1 and B-1)
- **josh.clark@hammertexas.com**      (Attachment A-1 and B-1)
- **js@trfpi.com**                    (Attachment A-1 and B-1)
- **jh@trfpi.com**                    (Attachment A-1 and B-1)
- **cv@trfpi.com**                    (Attachment A-1 and B-1)
- **jstanka@gmail.com**               (Attachment A-2 and B-2)

that are stored at premises controlled by Google, LLC, an email provider located at 1600 Amphitheatre Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachments A-1 and A-2.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, LLC to disclose to the government copies of the information (including the content of communications) further described in Section II of Attachments B-1 and B-2.  Upon receipt of the information described in Section II of Attachments B-1 and B-2, government-authorized persons will review that information to locate the items described in Section III of Attachments B-1 and B-2.

2.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Pacific Rim Traders, LLC (PRT), ML Trading Group, Inc., (ML Trading), Bay Area Tire Recycling, Inc. (BATR), N.F. Stroth & Associates, LLC (N.F. Stroth), TPP Export America, LLC also doing business as Trans Pacific Polymers (TPP), Hammer Trading, LLC (Hammer), Tariff Partners International, LLC (TPI) , and others have violated:

- Title 18 U.S.C. Section 286 - Conspiracy to Defraud the United States by False Claims
- Title 18 U.S.C. Section 550 – False Claim for Refund of Duties
- Title 18, U.S.C. Section 1341 – Mail Fraud
- Title 18 U.S.C. Section 1343 - Wire Fraud
- Title 18 U.S.C. Section 1956(h) - Conspiracy to Launder Money
- Title 18 U.S.C. Section 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity

There is also probable cause to search the information described in Attachments A-1 and A-2 for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachments B-1 and B-2.

## AFFIANT BACKGROUND

3.　　　I am employed as a Special Agent (SA) of the United States Department of the Treasury, Internal Revenue Service – Criminal Investigation ("IRS"), and am currently assigned to the Oakland field office. I have been a SA for approximately eleven months. As an Internal Revenue Service (IRS) Special Agent, my duties include the investigation of criminal violations of the Internal Revenue Code (Title 26, United States Code), Money Laundering Statutes (Title 18, United States Code), Bank Secrecy Statutes (Title 31, United States Code), and other related offenses.

4.　　　I have held the position of IRS Special Agent since November 2018. I completed the required Special Agent training at the Federal Law Enforcement Training Center in Glynco, Georgia. This training included eleven weeks of criminal investigative training including courses in law enforcement techniques, federal criminal statutes, conducting criminal investigations, and the execution of search warrants. This training also included instruction in the law of search and seizure under the Fourth Amendment of the United States. In addition to the criminal investigative training, I completed a Special Agent Basic Training course lasting thirteen and one-half weeks, which included courses in financial investigative techniques, legal

principles, and statutes representing criminal violations of the United States Code as enumerated in Titles 18, 26, and 31.  In 2007, I obtained a B.S. in Finance from San Diego State University, in San Diego, California.  In 2012, I obtained a Master's of Accountancy, Forensic Accounting Concentration from Golden Gate University in San Francisco, California.

5.      From my training and experience, I have learned that Google, LLC provides web based Internet electronic mail ("email"), and that stored electronic communications, including opened and unopened email for Google, LLC may be located on the server computers located at Google, LLC.  Further, I am aware that computers located at Google, LLC contain stored electronic information and stored electronic communications belonging to unrelated third parties.  Accordingly, this affidavit and application for search warrant seeks authorization solely to search for the computer accounts and/or files identified herein and seek authorization to do so solely following the procedures described.

6.      The facts contained within this affidavit come from my personal observation, my training and experience, information obtained from other agents, including agents of IRS and the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI") that are also investigating the above-listed violations, witnesses, government data, government sources, and research of public sources.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.      I believe that employees of N.F. Stroth, PRT, ML Trading, BATR, TPP, Hammer, TPI, and others conspired to submit false claims to U.S. Customs and Border Protection ("CBP").  I believe that PRT was a client of N.F. Stroth.  I believe that employees of N.F. Stroth have certified claims for drawbacks, which are refunds of import duties paid to CBP, that contained materially false information. I further believe the claims submitted by N.F. Stroth on behalf of PRT intentionally misrepresented the contents of exports and the PRT's qualification for refunds they would otherwise not be entitled to receive.  Specifically, claimant forms indicated plastic material (polyethylene terephthalate, or "PET") was exported, and lists

descriptions with Harmonized Tariff Schedule (HTS) Chapter 39 for Plastics and Articles Thereof. However, inspection of some of the shipping containers and/or the supporting documents indicate that the actual items exported included shipping containers full of used rubber tires, as well as metal scrap, plastic scrap, empty containers, cotton and dried grains. I believe TPP, and others modified bills of ladings and other export documentation to make it appear that exports were commercially interchangeable products of imported material and/or returned unused merchandise, which would be eligible for a drawback of duties paid on similar imports. I believe TPP, its principals (including Joshua Stanka and Joshua Clark), and others understood that by including modified descriptions of containers and adding descriptions on bills of lading with HTS Chapter 39 codes that PRT's claims for duty drawbacks would be approved by CBP. I believe the false information submitted to CBP allowed N.F. Stroth's client, PRT, to receive significant funds from the Department of Treasury that would not have otherwise been authorized. In exchange, PRT would share a percentage of the duty drawback with TPP and N.F. Stroth and others involved in the scheme. I believe that in addition to PRT, TPP effected a similar scheme with other importers of plastic materials.

8.     I believe that TPP was dissolved in approximately August 2017 and that Hammer took over some of its operations. Based on the evidence I've gathered during this investigation, I believe that Hammer continues to presently operate in the same manner that TPP did, with fundamentally some of the same principals, physical office location, and clients (both importers and exporters).

9.     I believe that following TPP's dissolution in approximately August 2017, TPI also took over some of its operations. Based on the evidence I've gathered during this investigation, I believe that TPI continues to presently operate in the same manner that TPP did, with fundamentally some of the same principals and clients (both importers and exporters).

## APPLICABLE STATUTES

10.     Title 18, United States Code, Section 286 reads in pertinent part: "Whoever enters into any agreement, combination, or conspiracy to defraud the United States, or any department

or agency thereof, by obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim, shall be fined under this title or imprisoned not more than ten years, or both."

11.    Title 18, United States Code, Section 550 reads in pertinent part: "Whoever knowingly and willfully files any false or fraudulent entry or claim for the payment of drawback, allowance, or refund of duties upon the exportation of merchandise, or knowingly or willfully makes or files any false affidavit, abstract, record, certificate, or other document, with a view to securing the payment to himself or others of any drawback, allowance, or refund of duties, on the exportation of merchandise, greater than that legally due thereon, shall be fined under this title or imprisoned not more than two years, or both, and such merchandise or the value thereof shall be forfeited."

12.    Title 18, United States Code, Section 1341 reads in pertinent part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both."

13.    Title 18, United States Code, Section 1343 reads in pertinent part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money

or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

14.     Title 18, United States Code, Section 1956(h) reads in pertinent part:  "Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

15.     Title 18, United States Code, Section 1957 reads in pertinent part: "Whoever knowingly engages or attempts to engage in monetary transactions in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity shall be punished by fine or imprisonment for not more than ten years or both. The court may impose to be not more than twice the amount of the criminally derived property involved in the transaction."

## JURISDICTION

16.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

17.     Under 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## INFORMATION ABOUT GOOGLE, LLC

18.     In my training and experience, I have learned that Google, LLC provides a variety of on-line services, including electronic mail ("email") access, to the public.  Google, LLC allows subscribers to use other domain or other email address accounts, like the email accounts listed in Attachments A-1 and A-2.  Subscribers obtain an account by registering with Google, LLC.  During the registration process, Google, LLC asks subscribers to provide basic personal

information. Therefore, the computers of Google, LLC are likely to contain stored electronic communications (including retrieved and unretrieved email for Google, LLC subscribers) and information concerning subscribers and their use of Google, LLC services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

19.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

20.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

21.     In my training and experience, in some cases, email account users will

communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

22.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in

the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## FACTS SUPPORTING PROBABLE CAUSE

### Prior Search Warrant and Seized Evidence

23.     On May 16, 2019, United States Magistrate Judge, Honorable Sallie Kim, signed a federal search and seizure warrant for multiple email accounts hosted by Microsoft (Herein incorporated as Exhibit 1).  The facts establishing probable cause listed in Exhibit 1 as paragraphs 23 through 93 in the Affidavit of IRS Special Agent Justin Fletcher, with whom I am investigating this matter, are incorporated by reference herein for the purpose of establishing probable cause.

24.     On June 12, 2019, United States Magistrate Judge, Honorable Laurel Beeler, signed a federal search and seizure warrant for multiple email accounts hosted by Google, LLC. Included in the emails provided by Google, LLC pursuant to the June 12, 2019 federal search and seizure warrant are emails to and from the email address **macc2t@hotmail.com**.  These emails indicate the owner of the address is an individual named "Michael Choy" and/or "Michael C" (Choy).  The emails mostly reference bills of lading or shipping instructions.  From the emails I have reviewed, I believe Choy modified bills of ladings to make them appear to reflect exports of products that would be considered commercially interchangeable with imported material and/or returned unused merchandise for the purposes of duty drawback claims.

25.     I reviewed emails provided by Microsoft pursuant to a September 17, 2019 federal search and seizure warrant including emails sent to and from:

       a.     Michael Choy (Choy), owner of the email address

**mchoy.scm@gmail.com**

b. Joshua Clark (Clark), owner of the email address

**josh.clark@hammertexas.com**

c. Joshua Stanka (Stanka), owner of the email address **jstanka@gmail.com**

d. Joshua Stanka (Stanka), owner of the email address **js@trfpi.com**

e. John Hendrick (Hendrick), owner of the email address **jh@trfpi.com**

f. Chris Vines (Vines), owner of the email address **cv@trfpi.com**

### Modified Bills of Lading Observed in Email Communications

26. Included in the emails provided by Microsoft pursuant to a September 17, 2019

federal search and seizure warrant for emails associated with **michael_a_choy@hotmail.com**

and **macc2t@hotmail.com** are emails sent to and from the email address

**mchoy.scm@gmail.com**.  These emails indicate that Choy is the owner of all three addresses.

From the emails I have reviewed, I believe Choy received, via email, original bills of lading from

Liang and modified them before sending them, via email, in modified format to Stanka and

Clark.  I believe Choy modified bills of lading or shipping instructions to make them appear to

reflect exports of products that would be considered commercially interchangeable with

imported material and/or returned unused merchandise for the purposes of duty drawback claims.

I have reviewed bills of lading obtained directly from shipping companies and compared them to

the bills of lading observed in the email communications.  The altered bills of lading contain a

different exporter (often by or care of PRT and/or ML Trading) and description of goods, and

often include a different port of loading and/or gross weight.  I believe TPP, Hammer, TPI,

Stanka, Clark, Choy, NF Stroth and its employees, and others understood that by including

modified descriptions of shipping container contents and altering descriptions on bills of lading

with HTS Chapter 39 codes that PRT (and other importers) would be approved for a duty

drawback from CBP. I believe the false information submitted to CBP allowed N.F. Stroth's

client, PRT (and other importers), to receive significant funds from the Department of Treasury

that would not have otherwise been authorized. The documentation for the drawback claim was

sent from Michael Choy to TPP to PRT and then to N.F. Stroth. N.F. Stroth matched the export

documentation with PRT import documentation and prepared the duty drawback claim

application paperwork with PRT listed as the claimant. PRT was utilized specifically for their

import documentation and a bond (in the case of PRT, $2,000,000.00) which is a required

component of CBP's accelerated payment program. Information provided to the investigators by

Dale Behm, former General Manager for PRT, indicated that PRT was compensated

approximately 15% on all duty drawback refunds, while N.F. Stroth was compensated

approximately 3% to 5% for preparing the drawback claims. The remaining 80% to 82% of all

duty drawback claims was paid to TPP. At least some of these funds went to purchase drawback

rights or other import information from other importers of plastic resin.

27.     Examples of emails between **mchoy.scm@gmail.com** (Choy),

macc2t@hotmail.com (Choy), BATR (Yong Heng "Colin" Liang), and **jstanka@gmail.com**

(Stanka), and **josh.clark@hammertexas.com** (Clark):

      a.     On March 31, 2015, Colin Liang (from the BATR email account

info@bayareatirerecycling.com) emailed Choy (at the email account

macc2t@hotmail.com) with the subject "Fwd: BLS." I believe "BLS" stands for bills of

lading. The body contains only an email signature containing the contact information for

Colin Liang, and a forwarded message from Liang (at the same BATR email account

info@bayareatirerecycling.com) to Choy (at the email account **mchoy.scm@gmail.com**).

Attached to the email are four PDF documents titled "NAM2016038A BL",

"NAM2048495 BL", "NAM2047557 BL", and "953321251 BL." On March 31, 2015, Choy (from the email account macc2t@hotmail.com) emailed Stanka (at the email address **jstanka@gmail.com**) with the subject "New BLs" I believe "BLs" stands for bills of lading. The body reads "Josh, Please find BLs attached and confirm. Regards, Michael." Attached to the email are four PDF documents, one of which is titled "NAM2016038A BL." I believe that "NAM" refers to containers owned by the shipping company CMA CGM, Inc., and the number corresponds to a specific shipment. The bills of lading emailed to **jstanka@gmail.com** by Choy on March 31, 2015 are materially different than the same numbered bill of ladings emailed by Colin Liang to **mchoy.scm@gmail.com** (and further forwarded from Colin Liang to macc2t@hotmail.com) on March 31, 2015. The document emailed by macc2t@hotmail.com to **jstanka@gmail.com** on March 31, 2015 has been modified to show different Description of Goods, and Domestic Routing/Export Instructions. The bill of lading emailed by Liang to **mchoy.scm@gmail.com** on March 31, 2015 indicated that "Recycled Plastics" was shipped on board date "DD/MM/15", whereas the modified document emailed by Choy to **jstanka@gmail.com** on March 31, 2015 indicated that "PET Flake 3907.60.00" was shipped on board date "21/03/15".

b.       On August 24, 2017, Joshua Clark (from the Hammer email account **josh.clark@hammertexas.com**) emailed Choy (at the email account macc2t@hotmail.com) with the subject "This Weeks SI." I believe "SI" stands for shipping instructions. The body reads "Michael This is my new email and this weeks SI You will get Wire Tomorrow. Shipper (Performance Additives) 12 containers 3911.90.25 PPS Resin 3 containers 3906.90.20 PMMA/PS." On August 29, 2017, Colin Liang (from

the BATR email account info@bayareatirerecycling.com) emailed Choy (at the email account macc2t@hotmail.com). The body contains only an email signature containing the contact information for Colin Liang. Attached to the email are seven PDF documents, one of which is titled "NAM2798401." I believe that "NAM" refers to containers owned by the shipping company CMA CGM, Inc., and the number corresponds to a specific shipment. On August 29, 2017, Choy (from the email account macc2t@hotmail.com) emailed Clark (at the Hammer email account **josh.clark@hammertexas.com**) and Stanka (at the email account **jstanka@gmail.com**) with the subject "BLs 8/25." I believe "BLs" stands for bills of lading. The body reads "Hello Josh, Please find last weeks BLs attached. Regards, Michael." Attached to the email are three PDF documents, one of which is titled "NAM2798401." The document emailed by macc2t@hotmail.com to **josh.clark@hammertexas.com** and **jstanka@gmail.com** on August 29, 2017 has been modified to show different Shipper/Exporter, Description of Goods, and Total Gross Weight. The bill of lading number "NAM2798401" emailed by Liang to Choy on August 29, 2017 indicated that 53,318.870 kilograms of "Plastic Scrap" was shipped in "packages" by "Sealink International Inc.", whereas the bill of lading document number "NAM2798401" the modified document emailed by macc2t@hotmail.com to Clark and Stanka on August 29, 2017 indicated that 73,318.870 kilograms of "Recycled Plastic" was shipped by "Performance Additives LLC", with the "packages" reference replaced with "PMMA/PS 3906.90.20." I believe that the reference of "PMMA/PS 3906.90.20" refers to a specific HTS code Clark and Stanka required for the filing of duty drawback claims.

### Conversations Regarding Rubber Waste Observed in Email Communications

28.      Included in the emails provided by Microsoft pursuant to a September 17, 2019 federal search and seizure warrant for emails associated with

michael_a_choy@hotmail.com and macc2t@hotmail.com are emails sent to and from the email addresses js@trfpi.com, jh@trfpi.com, and cv@trfpi.com. These emails indicate that Joshua Stanka (Stanka), John Hendrick (Hendrick), and Chris Vines (Vines) are the owners of these addresses, respectively. From the emails I have reviewed, I believe that in early 2019, Stanka requested Choy's assistance in arranging for the shipment of waste silicone rubber to Hong Kong on behalf of Tariff Partners International, LLC (TPI).

29.     On  January 29, 2019, Stanka (from the email account **js@trfpi.com**) emailed Choy (at the email account macc2t@hotmail.com) a forwarded message with the subject "Fwd: Invoice 2017." The forwarded message appears to be from a recycling company located in Greenville, South Carolina, C&S Processing Company, to Stanka (at the email account **js@trfpi.com**). Attached to that message is an invoice for payment from TPI to C&S Processing Company for 40,000.00 pounds of "PET Film Pellets CAN001." I believe "PET" is an acronym for "Polyethylene Terephthalate Resin."

30.     On January 30, 2019, Stanka (from the email account **js@trfpi.com**) emailed Choy (at the email account macc2t@hotmail.com) with no subject line. The body reads "Could we ship that pet resin to your group in Kowloon?" On January 30, 2019, Choy (from the email account macc2t@hotmail.com) emailed a response to Stanka (at the email account **js@trfpi.com**) with a body that reads "Hi Josh, You can ship that 40,000 lbs pet to the following:…" and continues by providing a physical address to "Wayfeng Development Co., Limited" located in Hong Kong.

31.     On January 30, 2019, Stanka (from the email account **js@trfpi.com**) emailed

Choy (at the email account macc2t@hotmail.com) with the subject line "Re: Invoice 2017." The body reads in part "very much appreciate you taking that load of pet regrind."

32. On February 1, 2019, John Hendrick (from the email account **jh@trfpi.com**) emailed Choy (at the email account macc2t@hotmail.com) and Stanka (at the email account **js@trfpi.com**) with the subject line "Re: WAYFENG PO.pdf." The body of Hendrick's email reads "Michael, Attached is the invoice along with wire instructions." Attached to the email is an invoice for payment from "Wayfeng Development Co Ltd" to Tariff Partners International, LLC for 40,000.00 pounds of "Polyethylene Terephthalate Resin."

33. On February 2, 2019, Stanka (from the email account **js@trfpi.com**) emailed Choy (at the email account macc2t@hotmail.com) with no subject line. The body of the email reads "I'll handle on the wayfeng wire stuff." On February 3, 2019, Choy responds to Stanka's email with a body that reads "Is John expecting us to pay for this invoice?" On February 4, 2019, Stanka responds to Choy's email with a body that reads "No I was out Friday and he sent that before I discussed situation with him."

34. On February 22, 2019) Stanka (from the email account **js@trfpi.com**) emailed Choy (at the email account macc2t@hotmail.com) with the subject line "Re: Screenshot 2019-02-22 at 15.36.11." The body of the email reads "Next few weeks we need to move that silicone rubber and will pay you guys just to receive and ship back."

35. Between March 2019 and June 2019 numerous emails were exchanged between

Choy (at the email account macc2t@hotmail.com), Stanka (at the email account **js@trfpi.com**), Hendrick (at the email account **jh@trfpi.com**), Vines (at the email account **cv@trfpi.com**), and Robert Vale (Vale) (at the email account rvale@starrbridge.com) regarding the shipments of "PET" to "Wayfeng Development Co Ltd" in Hong Kong by TPI.  Vale appears to have assisted in the arrangement of shipping the materials.  Based on these emails, I believe that the 40,000.00 pounds of material that were shipped by TPI to Hong Kong were abandoned and never picked up by an end customer.  I believe that the emails indicate that Choy and Vale attempted to find a final disposition for the material before requesting TPI reimburse Choy for the storage and disposal costs.

36.    On June 21, 2019, Choy emailed (from the account macc2t@hotmail.com) Stanka (at the account **js@trfpi.com**), Vines (at the account **cv@trfpi.com**), and Vale (at the email account rvale@straunschb.com) with the subject line "Re:"  The body of the email reads in part "Hello all, My people that assisted on the last 5 containers are reluctant to work on this issue due to the lengthy delays and grey area of this product."  On June 21, 2019, Stanka responds to all of Choy's original recipients with a body that reads in part "Michael I'm not sure what is meant by 'grey area' as the material is simple silicone rubber."  On June 21, 2019, Choy responds in turn to all the same recipients with a body that reads in part "This materials HS code is rubber waste and it's banned for importation into China; hence grey area..."  On June 22, 2019, Stanka responds in turn to all the same recipients with a body that reads "Understood."

37.    Based on these emails, I believe that TPI's original intention was to ship the

materials to Hong Kong, not for commercial sale to "Wayfeng" but rather to obtain export documentation (bills of lading) required to file duty drawback claims. Furthermore, I believe that Stanka and Choy were both aware of the true nature of the material as "rubber waste" prior to shipping the material.

## Interview with Choy

38.     On August 14, 2019, I interviewed Choy. Also present at the interview was an HIS agent. During the interview, Choy acknowledged that he had a business relationship with TPP. Choy indicated that TPP paid Choy to arrange for exports and that Choy paid BATR to export the same items requested by TPP. Choy indicated that he understood the purpose of TPP's business with him was to match imports and exports for purposes of filing duty drawback claims. Choy stated that he had done business with TPP for a number of years, and had recent business with Stanka as recently as early 2019. Choy also indicated that since the dissolution of TPP in approximately mid-2017, he has continued to do business with Clark.

## CONCLUSION

39.     Based on the information provided above and in Exhibit 1, I have probable cause to believe that Choy, Stanka, Clark, Sarah Stroth, Neill Stroth, and others working for NF Stroth, Liang of ML Trading, and Behm and others at Pacific Rim Traders participated in a scheme to defraud the United States by falsifying bills of lading and other export documentation before submitting false drawback claims to CBP. I believe, that as part of this scheme, communications about and containing altered documents were sent by Choy, Stanka, and Clark to and from the email addresses **mchoy.scm@gmail.com**, **josh.clark@hammertexas.com**, **jstanka@gmail.com**, **js@trfpi.com**, **jh@trfpi.com**, and **cv@trfpi.com**. The falsified export documentation was prepared and used to submit duty drawback claims that allowed PRT (and other importers) to recoup tariffs paid on its imports when, in reality, drawback-ineligible waste tires and other scrap were exported to South Korea, Vietnam and other foreign destinations.

40.     Based on the information above, there is probable cause to believe that a search of

the information described in Attachments A-1 and A-2 will reveal the items described in Attachments B-1 and B-2, which are evidence, fruits, and instrumentalities of violations of Title 18 U.S.C. Section 286 (Conspiracy to Defraud United States through False Claims), Title 18, U.S.C. Section 550 (False Claim for Refund of Duties), Title 18 U.S.C. Section 1341 (Mail Fraud),  Title 18 U.S.C. Section 1343 (Wire Fraud); and  Title 18 U.S.C. Section 1956(h) (Conspiracy to Launder Money), and Title 18 U.S.C. Section 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity). Therefore, I respectfully request that the Court issue the proposed search warrant.


Benjamin Kurko, Special Agent
Criminal Investigation
Internal Revenue Service
Department of Treasury


Subscribed and sworn before me on this 25 day of October 2019.


HONORABLE BERNARD ZIMMERMAN
United States Magistrate Judge

## ATTACHMENT A-1
## PROPERTY TO BE SEARCHED

This warrant applies to information associated with the account:

- **mchoy.scm@gmail.com**

- **josh.clark@hammertexas.com**

- **js@trfpi.com**

- **jh@trfpi.com**

- **cv@trfpi.com**

that are stored at premises controlled by Google, LLC a company headquartered at

1600 Amphitheatre Parkway, Mountain View, California.

## ATTACHMENT A-2
## PROPERTY TO BE SEARCHED

This warrant applies to information associated with the account:

- **jstanka@gmail.com**

that are stored at premises controlled by Google, LLC a company headquartered at

1600 Amphitheatre Parkway, Mountain View, California.

## ATTACHMENT B-1

## PARTICULAR THINGS TO BE SEIZED

To ensure that agents search only account(s) described in Attachment A-1, this search warrant seeks authorization to permit employees of Google, LLC (the "Provider") to assist agents in the execution of the warrant.  To further ensure that agents executing this warrant search only the accounts described as **mchoy.scm@gmail.com, josh.clark@hammertexas.com, js@trfpi.com, jh@trfpi.com**, and **cv@trfpi.com**, the following procedures have been implemented:

### I.   Search Procedure

The search warrant will be presented to Google, LLC's personnel, who will be directed to isolate those accounts and files described in Section II below:

1.     In order to minimize any disruption of computer service to innocent third parties, Google, LLC's employees will create an exact duplicate of the accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein;

2.     Law enforcement personnel will thereafter review the information received stored and identify and copy only the information authorized to be further copied as described in Section III below; and

3.     Law enforcement personnel will then seal the original duplicate of the accounts and files received from Google, LLC's employees and will not further review the original duplicate absent an order of the Court.

In the review of information provided pursuant to this warrant by Google, LLC, the government must make reasonable efforts, to the extent required by the Fourth Amendment, to use methods and procedures that will locate and expose those categories of files, documents, or other electronically stored information that are identified with particularity in the warrant while minimizing exposure or examination of irrelevant or attorney-client privileged files to the extent reasonably practicable.

//

## II.    Files and Accounts to be Copied by Provider's Employees

To the extent that the information described in Attachment A-1 is within the possession, custody, or control of Google, LLC, regardless of whether such information is located within or outside of the United States, and including any chats, records, files, logs, or information that has been deleted but is still available to Google, LLC or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google, LLC is required to disclose the following information to the government for each account or identifier listed in Attachment A-1:

1.    The contents of all emails and chat sessions stored in the account from January 1, 2014 to the present, including copies of emails and chats sent to and from the account, draft emails/chats, the source and destination addresses associated with each email/chat, the date and time at which each email/chat was sent, and the size and length of each email/chat;

2.    All records or other information regarding the identification of the account, including full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

3.    All subscriber records for the account;

4.    All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, documents, and files;

5.    All records associated with the uploading, sending, and receipt of images, documents, and files, including all time and date stamps, device information, and IP addresses for each interaction;

6.    All records pertaining to communications between Google, LLC and any person regarding the account, including contacts with support services and records of actions taken; and

7.    All records or other information regarding the user's account settings.

**The Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.**

**III.     Information to be Further Copied by Law Enforcement Personnel**

All information described above in Section II that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18 U.S.C. Section 286 (Conspiracy to Defraud the United States by False Claims),Title 18, U.S.C. Section 550 (False Claim for Refund of Duties), Title 18, U.S.C. Section 1341 (Mail Fraud),  Title 18 U.S.C. Section 1343 (Wire Fraud); Title 18 U.S.C. Section 1956(h) (Conspiracy to Launder Money); and Title 18 U.S.C. Section 1957 (Money Laundering) those violations involving owners, employees, or contractors of Pacific Rim Traders, LLC, ML Trading Group, Inc., Bay Area Tire Recycling Inc., Asian International Trading, TPP Export America, LLC, Trans Pacific Polymers, LLC, Hammer Trading, LLC, Tariff Partners International LLC, Margaret Palacios, Dale Behm, Neill Stroth, Sarah Stroth, Villfredy Alvarenga, Yong Heng (Colin) Liang, Brian Henkels, Joshua Stanka, Joshua Clark, David Burbidge, and Michael Choy (the co-conspirators) occurring between January 1, 2014 and the present, specifically, for the account or identifier listed on Attachment A-1, information pertaining to the following matters:

1.     Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, information necessary to prepare drawback claims, documentation and support material of imports or exports, invoices, bills of lading, other shipping related documents.

2.     Communications between co-conspirators and others that discuss or otherwise show the user(s) of the target account and any company or entity affiliation or employment of that person or persons, and that of other members of the conspiracy and their respective roles and actions in furtherance of the scheme.

3.     Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, knowledge of drawback regulations, the harmonized

tariff schedule, or Department of Homeland Security and Customs and Border Protection regulations and requirements.

4.  Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, modification or knowledge of modification of bills of ladings, invoices, contents of containers, shipping documents, duty drawback claim documents, and exported materials.

5.  Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, the preparation of company books and records, the preparation of personal income tax returns, business income tax returns, refund amounts, methods of payment, bank account information, status of prepared and/or filed income tax returns, and knowledge of income tax laws and regulations.

6.  Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, information regarding the acquisition and distribution of funds received from the violations listed above, including bank account information, commission payments, bank account set up instructions, individuals listed with access to bank accounts, method of deposits, acceptance from federal authorities, and information regarding individuals with ability and access to virtually deposit checks.

7.  Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, information regarding agreements and business contracts between co-conspirators and others, including monetary agreements and non-monetary agreements.

8.  Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, personal identifying information, names, routing numbers, bank account numbers, addresses, dollar amounts, Moneygram, Western Union, MoneyPak, wiring instructions, pre-paid debit cards, or any other details related to financial accounts or financial transactions.

9.  Records that show who created, used, or communicated with the account, including records about their identities and whereabouts, insofar as this information constitutes evidence of a violation of Title 18 U.S.C. Section 286 (Conspiracy to Defraud the United States by False Claims), Title 18, U.S.C. Section 550 (False Claim for Refund of Durties), Title 18, U.S.C. Section 1341 (Mail Fraud), Title 18 U.S.C. Section 1343 (Wire Fraud); Title 18 U.S.C. Section 1956(h) (Conspiracy to Launder Money); and Title 18 U.S.C. Section 1957 (Money Laundering).

10. Identification of other accounts, domains, IP addresses, and computers owned or controlled by the same individual(s) controlling each account listed at Attachment A-1; and the following documents that tend to establish the identity of the person or persons in control of the account: identification documents (such as driver's licenses or passports), photographs, bills, receipts, vehicle registration documents, statements, leasing agreements, personal address books, calendars, daily planners, and personal organizers.

## ATTACHMENT B-2

## PARTICULAR THINGS TO BE SEIZED

To ensure that agents search only account(s) described in Attachment A-2, this search warrant seeks authorization to permit employees of Google, LLC (the "Provider") to assist agents in the execution of the warrant. To further ensure that agents executing this warrant search only the account described as **jstanka@gmail.com** the following procedures have been implemented:

### I. Search Procedure

The search warrant will be presented to Google, LLC's personnel, who will be directed to isolate those accounts and files described in Section II below:

1. In order to minimize any disruption of computer service to innocent third parties, Google, LLC's employees will create an exact duplicate of the accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein;

2. Law enforcement personnel will thereafter review the information received stored and identify and copy only the information authorized to be further copied as described in Section III below; and

3. Law enforcement personnel will then seal the original duplicate of the accounts and files received from Google, LLC's employees and will not further review the original duplicate absent an order of the Court.

In the review of information provided pursuant to this warrant by Google, LLC, the government must make reasonable efforts, to the extent required by the Fourth Amendment, to use methods and procedures that will locate and expose those categories of files, documents, or other electronically stored information that are identified with particularity in the warrant while minimizing exposure or examination of irrelevant or attorney-client privileged files to the extent reasonably practicable.

//

**II.   Files and Accounts to be Copied by Provider's Employees**

To the extent that the information described in Attachment A-2 is within the possession, custody, or control of Google, LLC, regardless of whether such information is located within or outside of the United States, and including any chats, records, files, logs, or information that has been deleted but is still available to Google, LLC or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google, LLC is required to disclose the following information to the government for each account or identifier listed in Attachment A-2:

1.     The contents of all emails and chat sessions stored in the account from January 1, 2018 to the present, including copies of emails and chats sent to and from the account, draft emails/chats, the source and destination addresses associated with each email/chat, the date and time at which each email/chat was sent, and the size and length of each email/chat;

2.     All records or other information regarding the identification of the account, including full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

3.     All subscriber records for the account;

4.     All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, documents, and files;

5.     All records associated with the uploading, sending, and receipt of images, documents, and files, including all time and date stamps, device information, and IP addresses for each interaction;

6.     All records pertaining to communications between Google, LLC and any person regarding the account, including contacts with support services and records of actions taken; and

7.     All records or other information regarding the user's account settings.

**The Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.**

**III.     Information to be Further Copied by Law Enforcement Personnel**

All information described above in Section II that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18 U.S.C. Section 286 (Conspiracy to Defraud the United States by False Claims),Title 18, U.S.C. Section 550 (False Claim for Refund of Duties), Title 18, U.S.C. Section 1341 (Mail Fraud),  Title 18 U.S.C. Section 1343 (Wire Fraud); Title 18 U.S.C. Section 1956(h) (Conspiracy to Launder Money); and Title 18 U.S.C. Section 1957 (Money Laundering) those violations involving owners, employees, or contractors of Pacific Rim Traders, LLC, ML Trading Group, Inc., Bay Area Tire Recycling Inc., Asian International Trading, TPP Export America, LLC, Trans Pacific Polymers, LLC, Hammer Trading, LLC, Margaret Palacios, Dale Behm, Neill Stroth, Sarah Stroth, Villfredy Alvarenga, Yong Heng (Colin) Liang, Brian Henkels, Joshua Stanka, Joshua Clark, David Burbidge, and Michael Choy (the co-conspirators) occurring between January 1, 2018 and the present, specifically, for the account or identifier listed on Attachment A-2, information pertaining to the following matters:

1.     Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, information necessary to prepare drawback claims, documentation and support material of imports or exports, invoices, bills of lading, other shipping related documents.

2.     Communications between co-conspirators and others that discuss or otherwise show the user(s) of the target account and any company or entity affiliation or employment of that person or persons, and that of other members of the conspiracy and their respective roles and actions in furtherance of the scheme.

3.     Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, knowledge of drawback regulations, the harmonized tariff schedule, or Department of Homeland Security and Customs and Border Protection regulations and requirements.

4.    Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, modification or knowledge of modification of bills of ladings, invoices, contents of containers, shipping documents, duty drawback claim documents, and exported materials.

5.    Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, the preparation of company books and records, the preparation of personal income tax returns, business income tax returns, refund amounts, methods of payment, bank account information, status of prepared and/or filed income tax returns, and knowledge of income tax laws and regulations.

6.    Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, information regarding the acquisition and distribution of funds received from the violations listed above, including bank account information, commission payments, bank account set up instructions, individuals listed with access to bank accounts, method of deposits, acceptance from federal authorities, and information regarding individuals with ability and access to virtually deposit checks.

7.    Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, information regarding agreements and business contracts between co-conspirators and others, including monetary agreements and non-monetary agreements.

8.    Communications between co-conspirators and others that discuss or otherwise show, in coded or un-coded language, personal identifying information, names, routing numbers, bank account numbers, addresses, dollar amounts, Moneygram, Western Union, MoneyPak, wiring instructions, pre-paid debit cards, or any other details related to financial accounts or financial transactions.

9.    Records that show who created, used, or communicated with the account, including records about their identities and whereabouts, insofar as this information constitutes evidence of a violation of Title 18 U.S.C. Section 286 (Conspiracy to Defraud the

United States by False Claims), Title 18, U.S.C. Section 550 (False Claim for Refund of Durties), Title 18, U.S.C. Section 1341 (Mail Fraud), Title 18 U.S.C. Section 1343 (Wire Fraud); Title 18 U.S.C. Section 1956(h) (Conspiracy to Launder Money); and Title 18 U.S.C. Section 1957 (Money Laundering).

10.    Identification of other accounts, domains, IP addresses, and computers owned or controlled by the same individual(s) controlling each account listed at Attachment A-2; and the following documents that tend to establish the identity of the person or persons in control of the account: identification documents (such as driver's licenses or passports), photographs, bills, receipts, vehicle registration documents, statements, leasing agreements, personal address books, calendars, daily planners, and personal organizers.