UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>   Plaintiff )<br>)<br>V. )<br>)<br>)<br>)<br>)<br>)<br>DALE BEHM; and JOSHUA CLARK )<br>   Defendants. )<br>_____) | CASE NO. 3:20-CR-00321 EMC<br><br>DEFENDANT'S RESPONSE TO UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS FRUITS OF SEARCH WARRANTS |

## **DEENDANT'S RESPONSE**

COMES NOW Defendant Joshua Clark, by and through undersigned counsel, and responds to the United States' Opposition to Defendant's Motion to Suppress Fruits of Search Warrants. The motion is based on this response, all previously filed motions, the following memorandum of points and authorities, the Fourth and Fifth amendments to the United States Constitution, and all other applicable constitutional, statutory and case authority. The following memorandum is offered in support.

                                                              Respectfully submitted,

Dated: November 4, 2021

                                                          Drew Findling
                                                          PHV-21739-2019
                                                          Findling Law Firm P.C.
                                                           3490 Piedmont Road, Suite 600
                                                           Atlanta, GA 30305
                                                          404-460-4500

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The defense uses this opportunity to respond to the government's assertions that: 1) the May 2019 affidavit supported probable cause for the October 2019 affidavit; 2) The October 2019 affidavit sufficiently tied Defendant Clark's Hammer Trading company to the alleged scheme; and 3) The totality of circumstances supports probable cause for a search of Defendant Clark's Hammer Texas email account.

### II. THE OCTOBER 2019 WARRANT WAS ISSUED IN CLEAR ERROR

#### A. Legal Standard

When reviewing a warrant, "a court is limited to the information and circumstances within the four corners of the underlying affidavit." United States v. Taylor, 716 F. 2d 701 (9th Cir. 1983). Much of the government's legal standard analysis is apt, save for its improper reliance on Massachusetts v. Upton, 466 U.S. 727, 730 (1984). The Supreme Court in Upton addressed probable cause requirements specifically "whenever an affidavit supporting the issuance of a search warrant relies on an informant's tip." Id. at 730. There is no informant's tip in this case.

#### B. May 2019 Affidavit Fails to Support Probable Cause

The government contends that the affidavit from the May 2019 search warrant supports probable cause for the October 2019 search warrant at issue, and it incorporated the May 2019 affidavit into its October 2019 affidavit for this reason. The May 2019 affidavit sought to search the email accounts of multiple associates of N.F. Stroth and Pacific Rim Traders. *See* Government's

Exhibit 1. Defendant Clark does not challenge the fruits of that search warrant, as it did not pertain to him in the slightest. Defendant does argue instead that the government seeks to use the information provided in the May 2019 affidavit to bolster probable cause in their October 2019 affidavit, and they still fail.

### i. The facts are unrelated to Hammer Texas

The May 2019 affidavit did not relate in any way to Hammer Texas. The government says so itself – that the May 2019 warrant affidavit "contained over seventy paragraphs of facts supporting probable cause to search for evidence related to the drawback scheme under investigation, many paragraphs relating to TPP Exports, which the affidavits demonstrate led to the Defendant as the investigation progressed." Dkt. No. 98, p. 5. The relevant facts in the May 2019 affidavit are about TPP Exports – not Hammer Trading, an entirely different company.

In its opposition, much like in its affidavit(s), the government misplaces culpability from TPP Exports to Hammer Trading. Id. at pp. 6-9. The government repeats ad nauseam the allegations in the affidavit which allegedly "connected TPP and Defendant to the fraud scheme." Id. at p. 6. Noticeably missing from this connection, however, is Hammer Trading. The facts only relate to TPP Exports, and to Mr. Clark only in his professional capacity with TPP export. If the government seeks to search email accounts of all employees of TPP Exports because they suspect wrongdoing, that is one thing – but to search an entirely separate account, made under a separate entity, crosses the fourth amendment line.

### ii. Facts that "led to the Defendant as the investigation progressed"

Moreover, the government suggests that the facts of the May 2019 affidavit eventually "led to the Defendant as the investigation progressed," but probable cause is not magically created by a wide-ranging investigation. Id. at p. 5. Alternatively, an investigation is bound by the confines of the

- 3 -
MOTION TO SUPPRESS

Fourth Amendment. In United States v. Grant, 682 F. 3d 827 (9th Cir. 2012), detectives obtained a warrant to search Defendant Grant's home, seeking to recover a firearm that was used in a homicide. The affiant suspected that Grant's two sons were connected to the homicide, thus loosely connecting Grant himself. The affidavit to search Grant's home incorporated information stemming from a months-long investigation of Grant's sons, including the results of multiple search warrants and tracking devices.

The Court held: "[The affidavit] relies on connections between Grant and two of his sons, Davonte and James, to conclude that evidence from the crime may have been in the . . . home. The totality of connections to Grant, however, is decidedly weak, and does not amount to probable cause to search his residence." Id. at 832. Moreover, the Court held, "the affidavit provides no reasonable basis for inferring that James was involved in the homicide." Id.

While the present case is not a murder case, the facts are similar. Here, the government sought a search warrant for Defendant Clark's Hammer Texas email account after a months-long investigation involving multiple search warrants of other people and places. The government alleges that the facts used to obtain a previous warrant, although used against people and entities unrelated to Mr. Clark, "led to the Defendant as the investigation progressed." Dkt. No. 98, p.5. But the government cannot use the entire record in this case to bolster probable cause for an unrelated, never-before-mentioned entity. Much like in Grant, the affidavit here is "exceedingly speculative" to assume that Mr. Clark's Hammer Texas email address would contain evidence of a crime allegedly committed under the umbrella of TPP Exports. Grant at 834.

### iii. The government seeks to make up for the failed June 2019 Search warrant

In its opposition to defendant's motion, the government indicates that the June 2019 search warrant of Mr. Clark's TPP Exports email account yielded no results. Only after that effort failed did the government attempt to widen the scope of their search, to Mr. Clark's separate and unrelated Hammer Texas email account. Now, they're attempting to justify their own missteps by misappropriating facts to support probable cause that never existed.

### C. The October 2019 Affidavit Fails to Tie Hammer Texas to the Alleged Scheme

Even without the facts incorporated from the May 2019 affidavit, the facts alleged in the October 2019 affidavit also fail to establish probable cause. The government contends that "[t]he [October 2019] affidavit further tied Clark and his companies, TPP Export and Hammer Trading, to the scheme" but in actuality, only TPP Exports is tied to the scheme in any way. Dkt. No. 98, p.7. The only facts in the October 2019 affidavit related to Hammer Texas are ones that suggest no level of culpability nor tie Mr. Clark to the alleged scheme through his use of the Hammer Texas company.

The government points to an August 24, 2017 email where Mr. Clark emailed Michael Choy from his Hammer Texas email account saying, "this is my new email" and discussing a wire and shipping instructions. Id. at p.6. It is reasonable to interpret this email as evidence that Mr. Clark continued to work in the drawback claims industry after the dissolution of TPP Exports in 2017. It is also reasonable to interpret this email as evidence that Mr. Clark continued to work with previous clients of TPP, like Mr. Choy. However, and this fact underlies much of this case, the practice of purchasing drawback rights from other companies is fully legal – and there are no facts to suggest that the business Mr. Clark was conducting under Hammer Texas was anything but that.

The government also points to an interview with Michael Choy to support probable cause in the October 2019 warrant. Id. at p.7. The interview, however, was fruitless. The government's own

affidavit sums it up: "[t]wo months before the Affidavit was submitted, choy was interviewed and confirmed his business relationship with TPP Export America and, after its dissolution, continued to do business with Clark." Id. This is not an allegation of wrongdoing on behalf of Hammer Texas or Clark. As they did with the August 24, email, the government is using a mere happening – an email exchange or a fact of two people working together – and painting it as part of a pattern of wrongdoing tying Mr. Clark's Hammer Texas account to the alleged scheme. In reality, this is just a fact: that Mr. Clark was still engaged in the customs industry at the time of the interview.

### D.  Considering Totality of Circumstances, Still No Probable Cause

The government responds to much of defense's assertions by urging this Court to look at all of these facts within the "totality of the circumstances described in the affidavits, and drawing all reasonable inferences" therefrom. Dkt. No. 98, p.7. The government is correct that a totality of circumstances approach is applicable under the Gates precedent. 462 U.S. 213, 238 (1983). However, in this case, the issuing magistrate failed to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 232.

### III.  CONCLUSION

For the above-stated reasons, Defendant Clark asks this Court to suppress the fruits of the October 2019 search warrant.

Respectfully submitted,

Dated: October 4, 2021

_____
Drew Findling
PHV-21739-2019
Findling Law Firm P.C.
3490 Piedmont Road, Suite 600